29749. DUNCAN et al. v. HARDEN et al.

JORDAN, Justice.

Scott Owen Duncan and Linda Dale Lentz Duncan brought a petition for the writ of habeas corpus against the Director of the DeKalb County Family and Children Services and the Commissioner of the Georgia Department of Human Resources, seeking to obtain custody of their minor child. The trial judge denied the parents relief under their habeas corpus petition, and the appeal is from that judgment.

The mother was unmarried at the time of the child's birth on May 13, 1974. She married the father of the child a few days before their habeas corpus petition was filed on September 19, 1974.

The respondents assert that both parents have surrendered their rights to the child to the Department of Human Resources, so that it might be placed with a suitable family for adoption. There had been no adoption at the time the habeas corpus proceeding was commenced. The trial judge temporarily restrained the respondents from any activities leading to the adoption of the child. The proposed adoptive parents have not intervened in the case.

The respondents are not contesting the fitness of the natural parents to have custody of their child, but are relying entirely on their written consent for its adoption.

Code Ann. § 74-403 (1) (Ga. L. 1941, pp. 300, 301; 1950, pp. 289, 290; 1957, p. 367; 1960, pp. 791, 792; 1967,

pp. 107, 108) provides in part: "except as otherwise specified in the following subsections, no adoption shall be permitted except with the written consent of the living parents of a child. Said consent, when given freely, voluntarily, may not be revoked by the parents as a matter of right."

The mother had discussed temporary child custody and adoption with DeKalb welfare employees prior to the birth of the child. On May 17, 1974, four days after the child was born, she signed documents authorizing both temporary foster home care and adoption. The mother testified that she did not realize that she was signing a consent for the adoption of her child, but thought she was agreeing only for its temporary care. The caseworker assigned to the mother's case testified that the mother called her on the date the consent for adoption was signed and asked that she be allowed to sign the consent, that the mother seemed to be normal, and appeared to read and understand the form. The consent form had no heading which would indicate that it was a consent for adoption.

The consent for adoption was signed by the mother on the first day that she was released from the hospital after the delivery of her baby and tubal ligation surgery. She testified that she was still in considerable pain and left the hospital only because she was worried about her son (by a previous marriage) who was sick; and that she was taking Demerol and Valium, which had been prescribed by her obstetrician.

The obstetrician testified that Demerol is an analgesic medication for pain, that it has an analgesic effect and causes a type of euphoria, and that the euphoric feeling could affect a person's judgment if the Demerol was used in sufficient quantity. He testified that Valium is a tranquilizer, and that it would dull her thinking. There was testimony by a pharmacist that she filled a prescription for Demerol for the mother on the date the consent for adoption was signed.

The mother testified that when she came to her apartment from the hospital she learned that an uncle had been shot and was in critical condition, and that her grandfather was seriously ill. Because of her mother's continued illness, and because her mother had threatened

to disown any daughter who had a child born out of wedlock, she had not told her mother about the baby. Her mother could not understand why she did not come home. For all of these reasons she needed to go to her mother's home in Valdosta.

The pressure of the family circumstances of the mother and the mind-dulling medication she was taking at the time she signed the consent for adoption, certainly raise grave doubts that she freely and voluntarily consented to the adoption of her child with full knowledge of the consequences of her act.

After the baby was placed in a temporary foster home and the mother had gone to her mother's home in Valdosta, the mother had numerous telephone conversations with her caseworker concerning her baby.

The caseworker testified that on June 13, 1974, the mother called and asked her what would happen if she changed her mind about consenting to the adoption of the baby. The caseworker discussed the matter with the deputy director at the agency, who said that it would be all right. At that time the father had not sent in his consent for the adoption. The caseworker called the mother on June 17, 1974, and "told her she could change her mind regarding releases, . . ." The mother did not get the baby then, and on July 8 the caseworker called her, after the father's release had come in the mail, and the mother told her to go ahead and place the baby. When the mother called on July 18 to check on the baby, the caseworker gave her some general information about the couple selected to place the child with for adoption. On August 12, 1974, the mother called the caseworker and stated that she had an attorney to get the baby back.

While Code Ann. § 74-403 (1) provides that the consent for adoption by the parents may not be revoked as a matter of right, it does not preclude such revocation prior to final adoption for good and sufficient cause. *Ritchie v. Dillon,* 103 Ga. App. 7, 11 (118 SE2d 115). In the present case the DeKalb agency apparently determined that the mother had good cause to withdraw her consent, since the agency agreed to such withdrawal.

The father's consent for the adoption of the child was not mailed to the DeKalb agency until after he received

what he considered to be a "threatening" letter from the caseworker. This letter stated in part: " I am requesting that you send these releases as soon as possible. If I do not receive them shortly, it will be necessary to approach the Juvenile Court regarding severing your parental rights. This is a complicated, drawn-out process which would require your and Dale's appearance in the Juvenile Court. . ."

The decision of the trial judge in a habeas corpus case on conflicting evidence will not be reversed unless there is a clear abuse of discretion. We are convinced that the evidence in the present case of the circumstances surrounding the consent for adoption of the father and the mother, and of the subsequent agreement of the agency to allow the mother to withdraw her consent, require a finding that the child should be given to the parents, and the trial judge abused his discretion in remanding custody to the respondents.

*Judgment reversed. All the Justices concur, except Gunter, Ingram and Hill, JJ., who dissent.*

ARGUED MARCH 12, 1975 — DECIDED APRIL 8, 1975 — REHEARING DENIED APRIL 22, 1975.

*Moffett, Henderson, Jones & Barnwell, John Walton Henderson, Jr.,* for appellants.

*Arthur K. Bolton, Attorney General, Dorothy Y. Kirkley, Assistant Attorney General, William Skinner,* for appellees.

*Jones, Wilson & Tomlinson, John E. Tomlinson, Nall, Miller, & Cadenhead, James B. Outman,* amicus curiae.

INGRAM, Justice, dissenting.

In a case involving the surrender of parental rights for adoption, as in the instant case, there is no statutory authority for the natural parent to withdraw the consent because of regret and a change of mind. Georgia Code Ann. § 74-403 (Ga. L. 1941, pp. 300, 301; 1950, pp. 289, 290; 1957, p. 367; 1960, pp. 791, 792; 1967, pp. 107, 108) states: "(1) Except as otherwise specified in the following

subsections, no adoption shall be permitted except with the written consent of the living parents of a child. Said consent, when given freely, voluntarily, may not be revoked by the parents as a matter of right . . . (2) Exemption where child abandoned or parental custody terminated.— Consent of a parent shall not be required ... where such parent has surrendered all of his or her rights to said child to a licensed child placing agency, or to a court of competent jurisdiction for adoption, or to the Department of Human Resources through its designated agents . . . (3) Illegitimate children. — If the child be illegitimate, the consent of the mother alone shall suffice. Such consent, however, shall not be required if the mother has surrendered all of her rights to said child to a licensed child-placing agency, or to the Department of Human Resources. . . ."

The statutory factor for consideration in a situation involving surrender of parental rights is whether the consent was given freely and voluntarily. The majority opinion expresses serious doubts about the voluntary nature of this consent. However, the findings of the trial judge shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Ga. Code Ann. § 81A-152 (a). Viewing the evidence in this case, a clear abuse of discretion by the trial judge is not apparent. Although the original consent was obtained from the mother on May 17, only four days after the child's birth, and under emotional circumstances, the mother was subsequently advised on June 17th that she could change her mind regarding the releases. The mother did not change her mind at this time, but subsequently married the father of the child and they filed their habeas corpus petition on September 19th. The factors surrounding the consent given by the mother in this case were carefully considered by the trial judge and his judgment ought not to be interfered with by this court unless he clearly abused his discretion. I respectfully dissent to the majority opinion because I cannot agree the trial judge clearly abused his discretion.

I am authorized to state that Justices Gunter and Hill concur in this dissent.