## 31316. DRUMMOND et al. v. FULTON COUNTY DEPARTMENT OF FAMILY & CHILDREN SERVICES et al.

UNDERCOFLER, Presiding Justice.

Timmy is a two and a half year old boy, who has been the foster child of the plaintiffs, the Drummonds, since he was one month old. He was placed in their home by the Fulton County Department of Family & Children Services (FCDFCS) after it received temporary custody by court order because the natural mother was unfit. In September, 1975, the natural mother's rights were terminated, legal custody was placed in FCDFCS, and Timmy became eligible for adoption. After their application was denied by the agency, the Drummonds filed this suit to enjoin Timmy's removal from their home and to force the FCDFCS to allow them to adopt Timmy. After the Drummonds' evidence was presented at the hearing on the interlocutory injunction, the FCDFCS moved to dismiss the complaint, and the motion was granted. The Drummonds appeal. We affirm.

1. The Drummonds' complaint seeking injunctive relief to prevent Timmy's removal was dismissed by the trial court as a matter of law. Enumerations 3, 6, 7, and 8 raise the question whether foster parents have any rights vis-a-vis their foster child, and thus standing to protest agency action on behalf of the child and to raise Fourteenth Amendment protections.

The Drummonds first argue that Code Ann. § 74-402, which states that "[a]ny adult person may petition for leave to adopt," supports their claim of standing to contest the agency's action. Although the Drummonds may have standing to bring an adoption petition in the sense that they are legally eligible to apply to the agency, they have no standing to contest the legal custodian's absolute discretion whether to give the consent requisite to a successful petition for adoption. See Division 5 of this opinion, infra. The contention that any such rights are conferred by this Code section is without merit.[1] We find *Duncan v. Harden,* 234 Ga. 204 (214 SE2d 890) (1975) inapposite as it deals with the revocation of consent by the natural parents. The mere statement of fact that the adoptive parents already chosen by the agency did not intervene in no way implies that all potential adoptive parents have any rights.

The Drummonds next urge that any application of the "best interests of the child" rule necessarily implies some de facto rights arising from the psychological dependency of a parent-child relationship which has been sustained over a period of time. Plaintiffs' expert witnesses testified to the trauma of separating a young child such as Timmy from the only parents he has ever known at an age when the separation could not adequately be understood or explained to him. See Alternatives to Parental Right in Child Custody Disputes Involving Third Parties, 73 Yale L. J. 15 (1963).

The best interest of the child test has been adopted in many jurisdictions. E.g., In re B. G., 11 Cal. 3d 679 (523 P2d 244) (1974); In re Confessora B., 348 N. Y. S. 2d 21 (1973); Halstead v. Halstead, 144 NW2d 861 (Iowa, 1966) (and cits.); Cummins v. Bird, 19 SW2d 959 (Ky., 1929). This rule contemplates a presumption that the best

---

[1]Nor do we find any merit to the argument that Code Ann. § 24A-2001, providing for appointment of counsel where children not represented by a custodian are brought before a juvenile court in delinquency, unruliness or deprivation proceedings, implies that foster parents may have certain rights.

interests of the child lie with the natural parent, but that this presumption may be rebutted by clear and convincing evidence to the contrary. In re Confessora B., supra.

The Georgia law, however, has not followed this pattern. The best interests of the child test is used only between parents who both have equal right to the child. Code Ann. § 74-107; *Knox v. Knox,* 226 Ga. 619 (176 SE2d 712) (1970). Where the dispute is between a natural parent and a third party, on the other hand, the court must award the custody of the child to the parent unless he has lost his parental prerogatives under Code Ann. § 74-108 or is unfit. *Edwards v. Cason,* 237 Ga. 116; *White v. Bryan,* 236 Ga. 349 (223 SE2d 710) (1976); *Knox v. Knox,* supra; *Perkins v. Courson,* 219 Ga. 611 (135 SE2d 388) (1964). See generally Stubbs, A Summary of the Georgia Law of Children, Ch. 7 (1969).

The Drummonds (and amici, The Concerned Foster Parents of Metro Atlanta and Foster Parents in Action) misconstrue the Georgia law in assuming that the best interests of the child rule applies to foster parents. Without this test and its focus on the child, there is no basis for recognizing any right in the "psychological parents." Since the focus in determining whether a third party is entitled to custody is on the natural parents and whether or not they have forfeited their rights or are unfit (Code Ann. § 74-107; *Perkins v. Courson,* supra), any relationship between the child and his foster parents is primarily irrelevant. *Stuckey v. Jones,* 212 Ga. 495 (93 SE2d 719) (1956); *Watkins v. Terrell,* 196 Ga. 651 (27 SE2d 329) (1943).

In· *Carson v. Marette,* 217 Ga. 614 (124 SE2d 74) (1962), in a similar situation where a foster parent sought to adopt a child whose legal custody had been placed in the juvenile court by written consent of the mother, the court placed the child in the plaintiff's foster home intending to allow the plaintiff to adopt it. When a neighbor complained that the plaintiff was treating the child cruelly, the juvenile court took the child back and placed it with the state agency. Plaintiff's habeas corpus petition was dismissed because she had no claim to the child. "The only custody that petitioner, Mrs. Carson, ever had of the child was that of custodial care under the order of the court

which could be revoked at any time." 217 Ga. at 615. We see no reason why the result should not be the same where the court has placed the legal custody in a state agency which also pays foster parents for the child's custodial care.

We thus find no merit in the Drummonds' claim of right by virtue of their status as Timmy's foster parents. The trial court did not err, as alleged in Enumeration 3, in denying any legal rights to foster parents who have cared for a child for more than two years and are his psychological parents.

Enumeration of error 7 urging that the trial court erred in holding that the Drummonds were not denied due process or equal protection under the Fourteenth Amendment must also fall under our holding that foster parents have no right to adopt a foster child and thus no right to contest the agency's withholding of consent. The Fourteenth Amendment protects life, liberty and property interests from undue interference by the state.[2] Board of Regents v. Roth, 408 U. S. 564 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U. S. at 577. The Drummonds allege several theories under which they claim entitlement to Fourteenth Amendment protections. We, however, find no merit to their contentions, and thus no standing to demand due process or equal protection of the laws.

The Drummonds' first argument that the right to adopt a child under Code Ann. § 74-402,[3] is a "protectable

---

[2] The Fourteenth Amendment in pertinent part provides: ". . . nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[3] The only statutory requirements for adoption are that the person be at least twenty-five years old or married and living with his spouse, at least ten years older than the child, a resident of the state, and

interest" under the Fourteenth Amendment has already been considered and rejected above. They in fact were given the right to apply, they were interviewed and the application denied. As we have already noted, the agency's discretion as to which adoptive family will be chosen is absolute and the Drummonds have no rights beyond being considered. Furthermore, the United States Supreme Court has made clear that property interests are defined by state law. Board of Regents v. Roth, supra. The law of Georgia very clearly provides no rights in foster parents to adopt.

For the same reason, the Drummonds can not base their due process claim on a "right of family privacy." Since they have no right to keep Timmy, they can have no expectation of family privacy. Stanley v. Illinois, 405 U. S. 645 (1972) and other cases cited by the Drummonds are inapposite as the court in those cases was dealing with the rights of the biological parents.

The Drummonds next claim that the refusal by the adoption agency to allow them to adopt Timmy was based on erroneous information which they had no opportunity to contradict or correct and entitles them to due process. However, where there is no property interest to be protected, the Fourteenth Amendment does not "guarantee against incorrect or ill-advised [agency] decisions." Bishop v. Wood, — U. S. — (96 SC 2074, 48 LE2d 684, 693) (1976).

Nor do we find merit in the Drummonds' claim that they had a "justified expectation" or "implied contract" to adopt Timmy. See Board of Regents v. Roth, supra; Perry v. Sindermann, 408 U. S. 593 (1972); Sims v. Fox, 505 F2d 857 (5th Cir., 1974).

The Drummonds' allegation that the agency's refusal to allow them to adopt Timmy constitutes "a governmental attack on one's 'good name, reputation, honor, and community standing' " (Sims v. Fox, supra, p.

---

financially able and morally fit to have the child. Code Ann. § 74-402. Of course, Code Ann. § 74-403 provides the conditions under which a child becomes available for adoption.

862; Wisconsin v. Constantineau, 400 U. S. 433 (1971)), and thus imposes due process obligations on the agency, is also without merit. Since the agency did not disclose this decision publicly, but merely communicated its decision orally at a meeting with the Drummonds, it cannot form the basis of a claim that the Drummonds' reputation in the community was impaired. Any other publicity "made in the course of a judicial proceeding which did not commence until after petitioner[s] had suffered the injury for which [they seek] redress . . . surely cannot provide retroactive support for [their] claim." Bishop v. Wood, supra, p. 692; Sims v. Fox, supra.

We thus find no basis for due process protections in favor of the Drummonds, and the equal protection arguments must also fail for the same reasons.

We decline to rule on the FCDFCS's assertions that res judicata and collateral estoppel bar relitigation of these constitutional issues. These claims arise from the fact that the Drummonds first brought a similar action against the FCDFCS in federal district court under 28 USC § 1983. When relief was denied there, the Drummonds instituted this suit in the Fulton County Superior Court. The FCDFCS has properly pleaded these affirmative defenses (Code Ann. § 81A-108 (c)); however, they must be properly proved by placing the entire certified record of the previous case in evidence. *Carr v. Car-Perk Services, Inc.,* 222 Ga. 793 (152 SE2d 692) (1966); *Smith v. Bank of Acworth,* 220 Ga. 626 (140 SE2d 889) (1965); *Glaze v. Bogle,* 105 Ga. 295 (31 SE 169) (1898). Since the Drummonds' case was dismissed before the FCDFCS had an opportunity to present its case, the certified record was not put in evidence, is not part of this record, was not considered by the trial court, and will not be considered here.

In conclusion, we hold that the Drummonds have no rights under the Fourteenth Amendment and thus no standing to contest the agency's action in refusing to consent to their adoption of Timmy. Their request for an injunction was correctly dismissed.

2. We also find no merit in Enumeration 8 claiming that the trial court erred in not holding that Timmy's constitutional rights were infringed since Timmy has no

right under the adoption statutes to choose his adoptive parents or consent to his adoption until the age of fourteen. Code Ann. § 74-403. Furthermore, he was not a party to this lawsuit.

3. In enumeration of error 14, the Drummonds claim a denial of due process by the FCDFCS because of its refusal to afford them a hearing under the Administrative Procedure Act, Code Ann. Ch. 3A-1. Code Ann. § 3A-114 provides that "In addition to any other requirements imposed by common law, Constitution, statutes or regulations: (1) In any *contested case,* all parties shall be afforded an opportunity for hearing after reasonable notice served personally or by mail." (Emphasis supplied.) The definition of "contested case" is contained in Code Ann. § 3A-102 (b): " 'Contested case' means a proceeding ... in which the legal rights, duties, or privileges of a party are *required by law to be determined by an agency after an opportunity for hearing."* (Emphasis supplied.)

We have already reviewed in essence in Division 1, supra, the common law, Constitution, and statutes in order to determine if any rights accrued to the Drummonds by virtue of their status as Timmy's foster parents, and have found none. It is also clear from the record that the FCDFCS rules and regulations also do not afford any right in the foster parents to adopt a foster child in their care. The normal policy, which was not carried out in this case, is to ask potential foster parents to sign a statement acknowledging that the child will not be available for adoption by them. Foster parents are, however, eligible to apply to adopt foster children, in exceptional cases.[4] County Letter No. 323, State Department of Family and Children Services (Oct. 15, 1971). It thus appears that the agency, rather than recognizing any priority in foster parents as potential adoptive homes, discourages such adoptions.

---

[4]"Foster boarding applicants are oriented from the beginning of the home study in a different way from adoptive applicants. The foster care plan is geared toward the temporary instead of the permanent. The home is not selected for the child with the idea that it will be a permanent home. Indeed, for most of the children in foster

Once, however, the foster parents and others have made known their wish to adopt a child, the agency is free to choose any or none of the applicants, according to its own policies. There is no opportunity for a hearing. Although each potential adoptive couple is interviewed, this functions as a fact finding mechanism rather than as an adversary proceeding or "hearing" in which evidence is presented. We, therefore, reiterate that the decision to choose adoptive parents for children in the custody of the FCDFCS is entirely discretionary in nature, the same as it would be for the natural parents in whose place the agency stands. Since there is thus no "contested case" within the meaning of the APA, the trial court did not err in failing to rule that such a procedure was necessary.

4. The Drummonds' enumeration of error four raises the question whether the trial court erred in dismissing their petition for adoption as fatally defective on the ground that the FCDFCS had not consented to the adoption. They allege that the consent was unreasonably withheld, thus unnecessary, and their petition should not have been dismissed.

Although the FCDFCS had only temporary custody

---

care, adoption will not be the ultimate plan. The foster parent may be older than adoptive parents would ideally be or may have health problems which do not rule them out as temporary foster parents but would cause adoption to seem questionable. Foster parents are asked to sign a statement when they accept a child to the effect that this child is not available for adoption by them.

"For the above and other reasons, the development of a foster home into an adoptive home for a foster child in that home must definitely be considered an exception. However, this plan should not be overlooked as a possibility for certain children nor should it be considered an inferior plan. The foster home as an adoptive home is generally considered a resource for older children who have formed meaningful relationships with the foster family or for children with health problems or handicaps which the foster parents understand, accept and handle satisfactorily." County Letter No. 323, State DFCS (Oct. 15, 1971).

of Timmy when he was removed from his natural mother and placed with the Drummonds at one month old, the Department obtained his legal custody on September 25, 1975, when the natural mother's parental rights were terminated.[5] Only then was Timmy eligible for adoption. Code Ann. § 74-403 requires the consent of the agency before a child placed in its legal custody may be adopted.[6] Code Ann. § 24A-3204 (a), which provides for the placing of children with an agency upon termination of parental rights, also mandates that consent of the agency is necessary for adoption.[7]

---

[5]"It is further ordered that legal custody of the said [Timmy] be placed with the Georgia Department of Human Resources, Division of Family & Children Services, and the said agency is granted the right to proceed with the adoption of said child. . ." Order, Fulton County Juvenile Court, September 25, 1975.

[6]§ 74-403. Consent of living parents or guardian. . . .

(1) Except as otherwise specified in the following subsections, no adoption shall be permitted except with the written consent of the living parents of a child . . .

(2) Exemption where child abandoned or parental custody terminated. . .

(4) Guardian.—If the child has a guardian of its person, the consent of such guardian shall be required, or if the child has been surrendered or *committed by court order to a licensed child-placing agency, the consent of such agency shall be required.*

[7]§ 24A-3204. Commitment to agency.

(a) If, upon entering an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall commit the child to the custody of the Division of Children and Youth or a licensed child-placing agency, willing to accept custody for the purpose of placing the child for adoption, or in the absence thereof in a foster home or take other suitable measures for the care and welfare of the child. The custodian has authority to consent to the adoption of the child, his marriage, his enlistment in the armed forces of the United States and surgical and other medical treatment for the child.

The FCDFCS as legal custodian of Timmy stands in loco parentis and has all the legal rights of a natural parent, including the benefit of the prima facie right to custody. See *Porter v. Watkins,* 217 Ga. 73 (121 SE2d 120) (1961); *Parker v. Thomas County Dept. of Public Welfare,* 214 Ga. 701 (107 SE2d 178) (1959). As is clear from Code Ann. § 74-403, the agency also has the right to choose the adoptive parents of its wards by giving or refusing its consent to adopt.[8] Since the Drummonds did not have, nor claim to have this consent, the adoption petition was fatally defective, and subject to dismissal.

The Drummonds claim, however, that the consent of the FCDFCS was withheld unreasonably, was "arbitrary" and was "clearly an 'unwarranted exercise of discretion'." Since we have already held that the Drummonds have no right or standing to challenge the agency's action, the trial court properly dismissed this claim.

5. Enumerations of error 1, 2, 5, 9 and 12 need not be considered as they relate to procedural or evidentiary aspects of the case which are irrelevant since we here affirm the dismissal of the case as a matter of law for failure to state a claim for relief. We also hold that the trial court did not err in denying the Drummonds' motions for supersedeas, for new trial, or for reconsideration.

Both parties' motions to strike are denied.

*Judgment affirmed. All the Justices concur, except Hill, J., who concurs specially, and Jordan, J., who dissents.*

ARGUED JULY 13, 1976 — DECIDED
SEPTEMBER 7, 1976.

*Margie Pitts Hames, Mary Ann Oakley, Barbara J. Bethune,* for appellants.

*Troutman, Sanders, Lockerman & Ashmore, Daniel*

---

[8]The Drummonds' reading of the statute whereby the agency's consent would not be required clearly misconstrues its language. See n. 7, supra.

*S. Reinhardt, Robert L. Mote, Arthur K. Bolton, Attorney General, Lois Oakley, Assistant Attorney General,* for appellees.

*Lawrence L. Schneider,* amicus curiae.

HILL, Justice, concurring specially.

Although I concur in the judgment of the court, I am unable to agree that because plaintiffs have not been denied life, liberty or property, they lack standing to urge equal protection arguments. The Fourteenth Amendment provides in pertinent part as follows: ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Standing to assert a denial of equal protection does not require a deprivation of life, liberty or property, but requires only the denial to a person by the state of the equal protection of the law, which denial affects the person asserting the claim personally and differently from others similarly situated. In Moose Lodge No. 107 v. Irvis, 407 U. S. 163 (92 SC 1965, 32 LE2d 627) (1972), a guest was refused service in the dining room and bar of a private club licensed by the state to sell liquor. Although the state's licensing was found not to be sufficient state action to invoke the Fourteenth Amendment, the court found that the guest had standing to litigate the equal protection claim. The court did not predicate standing to make the equal protection argument on a deprivation of life, liberty or property.

The plaintiffs contend that the state considered race in its decision not to permit plaintiffs' adoption of Timmy. The Fulton County Department of Family & Children Services presented evidence that other factors such as age, health and psychology were considered. However, this issue had been adjudicated between these same parties in the United States District Court, where it was found that consideration of race, to the extent it contributed to the decision, was only such legitimate consideration as was necessarily required in determining the proper placement of Timmy, and was not a part of an automatic placement policy based solely on race. The plaintiffs' complaint in federal court was dismissed.

Drummond v. Fulton County Department of Family & Children Services, 408 FSupp. 382 (N. D. Ga. Jan. 30, 1976).

The court below had before it a certified copy of the district court's decision. The decision itself, even without the record, is sufficient to show the issue decided. See Pye v. Department of Transportation of State of Ga., 513 F2d 290 (5th Cir. 1975). Cf. *Ferguson v. Caldwell,* 233 Ga. 887 (213 SE2d 855) (1975). Although the district court did not decide the state law questions, it did decide this Fourteenth Amendment issue. The district court had jurisdiction to decide that issue. Because the judgment of that court has not been reversed or set aside, that judgment is conclusive as between the parties here. Code Ann. § 110-501. Therefore, the court below committed no error in dismissing plaintiff's claim of denial of equal protection of the laws.

JORDAN, Justice, dissenting.

I do not agree with the holding in the majority opinion that the "relationship between the child and his foster parents is primarily irrelevant" and the conclusion that "we thus find no merit in the Drummonds' claim of right by virtue of their status as Timmy's foster parents."

The facts in *Carson v. Marette,* 217 Ga. 614 (124 SE2d 74) (1962), cited in the majority opinion, which denied the claim of the foster parent, are vastly different from the facts in this case. In *Carson* the custody of the foster parent had been revoked by the juvenile court based on a complaint filed in that court alleging abuse and mistreatment of the child by the foster parent. Certainly this was sufficient to eliminate any legal claim or right the foster parent might have had. In the case under consideration the facts show love and care for the child and no court has ever revoked the custodial care given to the foster parents at the time the child was placed in their home.

It is my position that when a state agency having only legal custodial status places a child in a foster home, tacit approval is given that such foster parents are eligible to be adoptive parents. Once this relationship is shown to exist the burden should be upon the agency to

show that conditions have changed adversely affecting the welfare of the child, such as was done in *Carson,* supra. Unless such changed conditions are shown to exist, the agency no longer has the absolute and arbitrary discretion to refuse such application to adopt.

Here the record shows that the FCDFCS had approved the Drummonds as fit and proper foster parents for the care and protection of this child. This love, care and protection lasted some 2-1/2 years without complaint by the agency. During this period of time the foster parents became the psychological parents of the child, the only parents he had ever known. Upon their application to adopt, permission by the agency should have been given in the absence of a showing that they were no longer fit or eligible to become the adoptive parents.

This is not a dispute between the natural parent(s) of a child and some third party, as was the situation in several cases cited by the majority. This dispute is between foster parents who in time have become psychological parents and a state agency whose only interest should be that the "best interest of the child" test has been met. The initial determination of this test was made by the agency when it placed custodial care of the child in the Drummonds at the age of one month. This "best interest of the child" determination is presumed to continue until the contrary appears. This record is devoid of facts to show such a change. The Drummonds' application to adopt was simply "denied."

Georgia should follow the lead of several states which have recognized that legal rights can attach to foster parents under certain conditions. See In re Confessora B., 348 N. Y. S. 2d 21 (1973). Under the facts of this case the foster parents had clearly established an interest in the child sufficient to entitle them to a judicial determination of their right to adopt.

In my opinion the trial court erred in dismissing the complaint for failure to state a claim.

I respectfully dissent.