A93A0930. FAMILIES FIRST v. GOODEN et al.
A93A0931. MARVE v. FAMILIES FIRST.

(439 SE2d 34)

JOHNSON, Judge.

The complexity of these companion cases warrants a detailed review of the underlying facts and a brief introduction of the parties involved. Families First is a non-profit adoption agency. Vanessa Gooden is the biological mother of the child placed with Families First for adoption. Roderic Ball was Gooden's boyfriend prior to and after the birth of the child. Gerald Marve is Gooden's husband. Marve and Gooden were married in 1987. Marve was in the U. S. Navy and stationed in California during the period from before the conception until after the birth of the child. Gooden lived in Georgia at all times relevant to this action.

During her pregnancy, Gooden decided to place her baby for adoption through Families First. When the baby was born, however, Gooden changed her mind and took him home with her from the hospital. Several days later Gooden changed her mind again, deciding that she would give the child up for adoption after all. She and Ball, whom she claimed to be the child's father, took the child to Families First. Both Gooden and Ball executed the surrender of parental rights and acknowledgment of surrender of parental rights forms required by OCGA § 19-8-4 in the form prescribed by OCGA § 19-8-26 (a) and (g). Gooden also executed the mother's affidavit in the form prescribed by OCGA § 19-8-26 (h). On the mother's affidavit form, Gooden swore under oath that she was divorced, and she identified Ball as the child's father. She left blank spaces on the affidavit form showing her date of marriage, her spouse's address, and the date and place of her divorce.

Families First immediately placed Gooden's child in foster care pending final adoption. Three months later, Families First received the child's birth certificate from the State of Georgia. The birth certificate listed Marve as the child's father. When Families First asked Gooden about this, she admitted for the first time that she and Marve had never divorced and were still married. She continued to insist that Ball was the father of the child, however, and informed Families First that Marve had agreed to sign the necessary surrender documents. Gooden gave Families First an address for Marve, and he was contacted. Marve, having been told by his wife that she had miscarried, knew nothing about the birth of the child or the adoption. When he learned of the placement from Families First, he informed the agency that he wanted to keep the child.

Based upon all these factors, Families First filed the underlying declaratory judgment action against Gooden, Marve and Ball to determine if it had the right to consent to the adoption of the child, and

to determine paternity of the child insofar as resolution of that issue was critical to its ability to satisfy its obligations under Georgia's adoption statutes. Marve filed an answer, a counterclaim, and a petition for a writ of habeas corpus seeking immediate custody of the child. Gooden and Marve appeared together at the habeas hearing, and informed the court that they wanted to raise the child. After hearing the habeas petition, the trial court ordered Families First to release the child to Marve pending the receipt of blood test results.[1] Marve, Gooden and Ball agreed to submit to HLA blood tests. The results of these blood tests established that *neither* Marve nor Ball was the father of the child. Marve requested and submitted to an additional blood test conducted by a different laboratory. The results of this test also excluded any possibility that Marve is the biological father of the child.

Gooden filed an amended answer and counterclaim raising, among other things, the claim that the mother's surrender documents were void because part of the mother's affidavit was incomplete. Ball moved to dismiss the suit against him on the grounds that the blood test proved that he was not the father of the child and asserting that he was therefore not a proper party to the litigation. The trial court granted Ball's motion.

Families First, Gooden and Marve filed motions for summary judgment. The trial court granted summary judgment to Marve on the issue of paternity, holding as a matter of law that he is the presumptive father and that he had not surrendered his parental rights. Summary judgment was also granted to Gooden and Marve on the issue of the invalidity of the surrender documents. Summary judgment was granted to Families First on the issue of whether it is a charity. The trial court denied summary judgment to Families First on the issues of the validity of the surrender documents as well as on the claims for damages for intentional infliction of emotional distress and punitive damages filed by Gooden and Marve. The trial court also denied summary judgment to Families First and Gooden on the issues of duress and mental incapacity. Thus, the only issues which were not decided by summary judgment were the claims by Gooden and Marve for punitive damages and for damages for emotional distress, Gooden's claims of duress and mental incapacity, and the extent of Families First's immunity from liability. Families First, Gooden and Marve appeal the adverse rulings.

---

[1] Since September 27, 1991, the date of the order on Marve's habeas petition, the child has been in Marve's custody, though the report of the guardian ad litem which is in the record shows that the child is physically in the custody of Gooden and Gooden's mother.

## Case No. A93A0930

1. Gooden and Marve filed a motion to dismiss Families First's appeal based on the contention that this is an appeal of a paternity case and therefore subject to the discretionary appeal procedures set forth in OCGA § 5-6-35. We do not agree that this is an appeal of a paternity case. While one issue involves paternity, it is ancillary to more significant issues in this appeal, including concerns about the validity of surrender of parental rights documents and the interpretation of the Georgia adoption code. Adoption cases do not fall under OCGA § 5-6-35 (a) (2). *Moore v. Butler*, 192 Ga. App. 882, 883 (1) (386 SE2d 678) (1989). Nor do other issues as to which summary judgment was granted. Therefore, the trial court's decisions are directly appealable pursuant to OCGA § 9-11-56 (h). The motion to dismiss the appeal is denied.

2. Families First contends that the trial court erred in holding that the surrender documents executed by the mother were invalid as a matter of law solely because the mother's affidavit contained some blank spaces. We agree and reverse.

The surrender of rights form, acknowledgment of surrender of rights form and the mother's affidavit are separate documents with distinct purposes. As stated on the surrender of rights form, its purpose is to effect a surrender of all of the parent's rights, title and claim to the child. As stated on the acknowledgment of surrender form, its function is to show that the parent has read and understands the accompanying surrender of rights document. Both these documents would have to be properly executed for there to be a valid surrender. *Johnson v. Smith*, 251 Ga. 1, 2 (2) (302 SE2d 542) (1983); *Nelson v. Taylor*, 244 Ga. 657 (261 SE2d 579) (1979). In this case, it is undisputed that the surrender of rights form and the acknowledgment of surrender form were properly executed.

On the other hand, the purpose of the mother's affidavit, as stated on the form itself, is to gather information to be used by the agency in notifying and determining the rights of the *father*.[2] It does not purport to protect or otherwise affect the rights of the mother. Fathers are not even required to execute such an affidavit. The form itself provides that the mother does not have to answer all of the questions. In fact, it expressly states that the mother has "the right not to disclose" information about the biological father. The form also contains many sections which would be inapplicable in certain situa-

---

[2] This purpose was served in this case. When Families First received the birth certificate and noticed the discrepancy between the information on the affidavit and that on the birth certificate, it began investigating and obtained information which allowed it to notify the husband of the mother's surrender.

tions and would, of necessity, remain blank. Thus, even if Gooden had accurately completed all spaces applicable to her spouse, due to the nature of the form prescribed by the statute, entire sections of the form would still be left blank. Accordingly, given the nature of the affidavit as well as the separate and distinct purposes of the documents, we hold that failure to accurately complete the mother's affidavit does not affect the validity of the mother's surrender of parental rights.

Consider the adverse effect that invalidating a surrender due to the mother's failure to accurately complete the mother's affidavit would have on the integrity of the adoption process in Georgia. Here, the mother left some spaces blank and put false information in others in what she admitted was a deliberate attempt to deceive the adoption agency into completing the adoption. She shall not now be allowed to use her deliberate omissions and misrepresentations to invalidate an otherwise valid surrender. We will not invalidate a surrender in which all other requirements of surrender have been met solely because of omissions from or inaccuracies in what is nothing more than an information-gathering device facilitating the satisfaction of the agency's legal obligations as to the rights of the biological father.

3. Families First also claims that the trial court erred in granting Gooden and Marve's motion for summary judgment on the issue of paternity. We agree that summary judgment was improperly granted on this issue. While a child born in wedlock is presumed to be the legitimate child of the husband, that presumption can be overcome by clear evidence to the contrary. OCGA § 19-7-20; *Black v. Prince*, 176 Ga. App. 465, 466 (1) (336 SE2d 318) (1985). Here, there is clear evidence to the contrary. Specifically, the two blood tests performed on the husband by two different laboratories excluded any possibility that he was the father.

In addition to the blood test evidence, it is clear that Marve was stationed in California and Gooden was living in Georgia at the time of conception. In her first sworn statement, Gooden testified that she and her husband had no access to each other around the time of conception. She also told the social worker at Families First that her husband was not the father. Contradicting these admissions, Gooden later testified on deposition that she did visit and have sexual intercourse with her husband around the time of conception. The testimony of a party who offers herself as a witness in her own behalf on a motion for summary judgment is to be construed most strongly against her when it is self-contradictory. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28-29 (343 SE2d 680) (1986). The party moving for summary judgment has the burden of establishing the non-existence of any genuine issue of fact and all doubts must be resolved in favor of the non-moving party. *Crosson v. Lancaster*, 207

Ga. App. 404, 407 (4) (427 SE2d 864) (1993). Gooden and Marve have not met this burden. Indeed, the evidence tends to exclude the possibility that Marve is the father. The only evidence in support of Marve's claim is his statement that he had sexual intercourse with Gooden around the time of conception. It is upon this bare thread that any genuine issue of fact exists on his claim of paternity. The existence of genuine issues of material fact on the question of paternity required that the motion for summary judgment be denied and that the case be adjudicated on its merits.

Because the blood tests here indicate that Marve cannot be the father of the child, at the trial of this issue, the trial court must instruct the jury, as required by OCGA § 19-7-49 (c), "that, if they believe that the witness presenting the [blood test] results testified truthfully as to those results and if they believe that the tests and comparisons were conducted properly, it will be their duty to decide that the alleged parent is not the natural parent." See *Howard v. Howard*, 258 Ga. 846, 847 (375 SE2d 852) (1989).

4. Families First contends that the trial court erred in failing to grant its motion for partial summary judgment as to Gooden's and Marve's claims of intentional infliction of emotional distress. We agree. To support a claim for intentional infliction of emotional distress, conduct must be intentional or reckless, extreme and outrageous, and must result in severe emotional distress. *Jackson v. Nationwide Credit*, 206 Ga. App. 810, 811 (2) (426 SE2d 630) (1992). Here, the evidence in the record does not indicate that Families First acted recklessly or intentionally, that its actions were extreme or outrageous, or that its actions resulted in severe emotional distress. Families First began questioning Gooden about the paternity issue soon after it received the birth certificate. Until it had received this document containing information contrary to that Gooden had provided under oath on the mother's affidavit and otherwise, Families First had no reason to doubt her identification of Ball as the father. Ball himself acknowledged that he was the father. We note that Families First filed this action in order to have a court of law decide the rights and duties of all the parties regarding the adoption process and its validity. This clearly shows that Families First was not acting without regard to consequences. "[S]ummary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case." *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991). Contrary to Gooden and Marve's argument, the evidence did not create a triable issue as to intentional infliction of emotional distress. The trial court erred by denying the motion for summary judgment as to this claim.

5. Families First also contends that the trial court erred in not granting its motion for summary judgment on Gooden's claim of mental incapacity. As the parties have not cited any cases and as we have not otherwise found any Georgia cases specifically addressing the issue of mental incapacity and surrender of parental rights, we must base our analysis upon the law regarding mental incapacity to execute a contract generally. A contract is subject to cancellation if the person executing the contract was entirely without understanding of the contract or if the person lacked a full and clear understanding of the nature and consequences of the contract. See *Norfolk Southern Corp. v. Smith*, 262 Ga. 80, 84 (3) (414 SE2d 485) (1992). Gooden had the burden of showing that she lacked the necessary mental capacity at the time she executed the surrender documents. See *Nelson v. State Farm Life Ins. Co.*, 178 Ga. App. 670, 672 (344 SE2d 492) (1986). Gooden stated on deposition that she knew what adoption meant, that she wanted to push the adoption through, that she knew what she was doing when she signed the surrender documents and that she felt she could not handle parenting. Not only did she fail to come forward with evidence to establish that she lacked the necessary mental capacity, she testified herself out of court on that issue. Therefore, Families First's motion for summary judgment should have been granted on this issue.

6. Families First claims that the trial court erred in not granting its motion for summary judgment on Gooden's claim of duress. "Duress is defined as imprisonment, threats, or other acts, by which the free will of the party is restrained. OCGA § 13-5-6." (Punctuation omitted.) *Miller &c., Inc. v. Fayette County*, 190 Ga. App. 777 (1) (380 SE2d 73) (1989). In this case, there was no evidence that Gooden was imprisoned or threatened or that her free will was restrained in any way. Summary judgment should have been granted to Families First on this issue.

7. Families First argues that the trial court erred in denying its motion for summary judgment on Gooden's and Marve's claims for punitive damages. In view of our holdings above that there is no tort liability, Families First's motion for summary judgment on the issue of punitive damages should also have been granted.

8. In its final three enumerations of error, Families First contends that the trial court erred in dismissing the case against Roderic Ball, in finding that Roderic Ball was not the father, and in sealing the guardian ad litem's report. However, the arguments intended to support these enumerations cite no authority and identify no particular erroneous statements of the law. "The mere repetition and rephrasing of an enumeration of error without more is not the argument anticipated by Court of Appeals Rule 15 (c) (2). The principal purpose of argument is to provide guidance to this court on the basis for a claim

of error and for citations of authority which tend to support appellant's allegation of error. A mere recital or repetition of the enumerated error is not argument." (Citations and punctuation omitted.) *T & M Investments v. Jackson*, 206 Ga. App. 218, 223 (9) (425 SE2d 300) (1992). Therefore, these enumerations are deemed abandoned. We do note, however, that Ball's solemn admissions in judicio that he is not the father of and that he is not making any claim to the child, the blood test results, and his execution of surrender documents, the validity of which he did not dispute while he was a party to the case, accomplish the purpose Families First had as to his rights when it made him a party to the litigation.

In view of the rulings above, the posture of this case is now as follows: Gooden has validly surrendered her rights to the child. Ball has surrendered and withdrawn any claim he had to the child and is no longer a party to this action. As each of Gooden's and Marve's tort claims have now been decided against them, the only issue remaining for trial is whether Marve is in fact the father of the child.

### Case No. A93A0931

In their cross-appeal, Gooden and Marve raise issues related to the trial court's ruling on the issue of Families First's qualification for charitable immunity. In view of our decision in Case No. A93A0930 that there is no tort liability, the issues on the cross-appeal are moot, and the judgment of the trial court as to these issues is affirmed.

*Judgment in Case No. A93A0930 affirmed in part and reversed in part. Judgment in Case No. A93A0931 affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED NOVEMBER 22, 1993 —
RECONSIDERATION DENIED DECEMBER 6, 1993 —

*Bauer, Deitch & Raines, Henry R. Bauer, Jr., George R. Ference, White, Smith, Howard & Ajax, Williston C. White*, for Families First.

*H & M Johnson, Mereda D. Johnson, Eddie D. Jones, Richard A. Coleman*, for Gooden and Marve.

*Jeanney M. Kutner, James B. Outman*, amici curiae.