A96A1224. IN THE INTEREST OF B. G. D., a child.
(479 SE2d 439)

BLACKBURN, Judge.
This case deals with the jurisdiction of the juvenile court under OCGA § 15-11-5 (a) (2) (C) and the right of a surrendering parent to withdraw a voluntarily given consent to the adoption of a child and the surrender of such person's parental rights. Under the current version of the adoption statutes, enacted in 1990, a parent who surrenders his or her parental rights in a child has ten days in which to withdraw that surrender. Thereafter, the surrender may not be withdrawn. OCGA § 19-8-9 (b).

Appellant, a birth mother who gave her newborn daughter up for adoption, appeals the juvenile court's entry of summary judgment terminating her parental rights.

The termination petition in this case was filed in the Cobb County Juvenile Court by HOPE for Children, Inc. (HOPE), a

licensed child placement agency, to terminate the rights of the child's putative father so the child could be placed for adoption. The name or location of the biological father was unknown to the mother. The record shows HOPE had provided Dowdell food and housing during her pregnancy and had helped her arrange for medical care. With HOPE's assistance, Dowdell found a couple in Boston to adopt the child, and this couple attended the child's birth. When her child was born, Dowdell signed a surrender of parental rights pursuant to OCGA § 19-8-9 (b) so the child could be adopted. After HOPE filed the petition to terminate the putative father's parental rights, Dowdell notified HOPE she desired to revoke her surrender, claiming she lacked capacity to consent to the surrender of her rights. On summary judgment, the trial court rejected her claim of incapacity.

1. We first address the question of the juvenile court's jurisdiction to render the subject judgment. "Jurisdiction over the subject matter of a case cannot be conferred by agreement or consent. [Cits.] A judgment rendered by a court without jurisdiction of the subject matter is a nullity and is subject to reversal by the appellate courts on their own motion. [Cit.]" *Barland Co. v. Bartow County Bd. of Tax Assessors*, 172 Ga. App. 61, 62 (322 SE2d 316) (1984).

The jurisdictional statute at issue in this case is OCGA § 15-11-5 (a) (2) (C), which grants the juvenile court exclusive jurisdiction "[f]or the termination of the legal parent-child relationship, *other than that in connection with adoption proceedings under Chapter 8 of Title 19, in which the superior courts shall have exclusive jurisdiction* to terminate the legal parent-child relationship and the rights of the biological father who is not the legal father of the child." (Emphasis supplied.)

This case is controlled by the Georgia Supreme Court's decision in *H. C. S. v. Grebel*, 253 Ga. 404 (321 SE2d 321) (1984). In *Grebel*, a couple who wished to adopt a child obtained a surrender from the child's mother and petitioned to terminate the rights of a putative father. Although no adoption proceedings were actually pending, the Supreme Court found the termination to be "in connection with" an adoption because the petition itself stated the termination was in pursuance of the couple's plans to adopt the child. Id. at 406. The purpose of the termination action here is to facilitate the adoption of B. G. D. *Grebel* establishes that this type of termination proceeding is "in connection with" an adoption, and therefore, exclusive jurisdiction over such matter is in the superior court.

We are therefore constrained to find the juvenile court lacked jurisdiction to consider this petition for termination of parental rights because that termination was sought "in connection with" an adoption proceeding. Thus, the judgment of the juvenile court must be vacated, and the case remanded to the juvenile court with direc-

tion that it be transferred to the superior court. See *Duval v. Dept. of Human Resources*, 183 Ga. App. 726, 727 (359 SE2d 756) (1987) (ordering remand and transfer to court of appropriate jurisdiction); Ga. Const. 1983, Art. VI, Sec. I, Par. VIII.

2. Language from older cases decided under a former version of OCGA § 19-8-9, which did not contain a ten-day limitation of the right to withdraw a voluntary surrender of parental rights, has been included in cases decided after 1977, when the limitation was first imposed. As the interpretation of this statute will arise upon remand, we clarify both the statute and the case law.

Pursuant to the present statute, OCGA § 19-8-9 (b), a parent who signs a valid voluntary surrender of parental rights has ten days within which to revoke that surrender as a matter of right; after the ten-day period, a surrender may not be revoked. Dowdell contends that even if her claims of incapacity and duress fail, the surrender of parental rights may be withdrawn at any time prior to the final adoption for *good and sufficient cause*. Dowdell relies upon the "good and sufficient cause" language contained in *Ridgley v. Helms*, 168 Ga. App. 435, 438 (309 SE2d 375) (1983).

A review of the history of the parental consent requirement in Georgia's adoption law demonstrates the source of the "good and sufficient cause" analysis and the existence of case law which holds that the surrender of parental rights may be withdrawn after the ten-day limitation period for good and sufficient cause, even when such surrender has been given freely and voluntarily, and illustrates how it has been statutorily abrogated. Georgia has long required, in one form or another, parental consent as a prerequisite for adoption. In 1941, the relevant provision of the adoption statute provided that, except as otherwise specified, "no adoption shall be permitted except with the written consent of the living parents of a child." Ga. L. 1941, p. 301. As this provision was interpreted in *Wheeler v. Howard*, 211 Ga. 596, 598 (87 SE2d 377) (1955), a parent could "arbitrarily" withdraw his or her consent to an adoption as a matter of right at "any time before final adoption."

In 1957, the legislature amended the statute to provide: " 'Said consent when given freely, voluntarily, may not be revoked by the parents as a matter of right.' " Ga. L. 1957, p. 367. In *Hendrix v. Hunter*, 99 Ga. App. 785, 789 (3) (110 SE2d 35) (1959), this Court interpreted the 1957 amendment and held that the evidence presented by the parent for the revocation of her consent did not supply "sufficient reason and justifiable cause for the withdrawal of consent by the natural mother." Id. at 789. In 1961, this Court quoted *Hendrix* for the proposition that "consent to the adoption, even when freely and voluntarily given, may be withdrawn by the natural parent or parents prior to the final order of adoption for *good and suffi-*

*cient cause.*" (Emphasis supplied.) *Ritchie v. Dillon*, 103 Ga. App. 7, 11 (3) (118 SE2d 115) (1961). After *Ritchie*, "good and sufficient cause" became the benchmark upon which revocations of parental consent were evaluated.

In 1966, the adoption statute was amended again to institute certain procedural changes. Ga. L. 1966, pp. 212-215. Under this version of the statute, courts continued to apply the "good and sufficient cause" analysis to those cases where parents attempted to revoke their consent. See *Duncan v. Harden*, 234 Ga. 204, 206 (214 SE2d 890) (1975) (citing *Ritchie* for the proposition that parents may not revoke consent as a matter of right, but only for good and sufficient cause); see also *Wellfort v. Bowick*, 147 Ga. App. 565 (1) (249 SE2d 363) (1978) (revocation of consent may be sustained for good and sufficient cause).

The Adoption Act of 1977 comprehensively revised the adoption law in Georgia and, for the first time, imposed a ten-day limitation on the right of a parent to withdraw a valid, voluntary surrender of parental rights. Ga. L. 1977, pp. 201-223. It introduced the requirement of a parent's "written surrender," which replaced the previously required "written consent." With regard to the issue of revocation, the statute provided: "A parent or guardian signing a surrender shall have the right to withdraw the surrender by written notice within 10 days after signing and the surrender document shall not be valid unless it so states. *Thereafter a surrender may not be withdrawn.*" (Emphasis supplied.) Ga. Code Ann. § 74-404 (b). Ga. L. 1977, p. 204. This ten-day limitation period did not preclude a surrendering parent from challenging the validity of the surrender based on duress, fraud, incapacity or other grounds which address the voluntariness of the consent, as the statute clearly contemplates a valid, voluntary consent.

Thereafter, this statute was addressed in *Ridgley*, supra, where a birth mother attempted to revoke her consent outside the ten-day window. The opinion expressly recognized the ten-day withdrawal period implemented in the 1977 statute but implicitly found its requirements for revocation to be no different than prior versions of the adoption statute. "[Consent] when given freely and voluntarily may be revoked as a matter of right within ten days after signing the document. OCGA § 19-8-4 (b) (Code Ann. § 74-404). After ten days, although consent may not be withdrawn as a matter of right 'it does not preclude such revocation prior to final adoption for good and sufficient cause.' *Duncan v. Harden*, [supra]; accord: *Wellfort*[, supra]." *Ridgley*, supra at 438. *Ridgley* borrowed the analysis found in *Duncan*, a 1975 case which had been decided prior to the 1977 amendment, and *Wellfort*; a 1978 case which did not address the 1977 amendment to the statute. *Ridgley* did not address the 1977

amendment that specifically prohibited the withdrawal of a surrender after the ten-day period had ended. This Court also used the *Duncan* analysis in *Boatman v. Chapman*, 174 Ga. App. 77 (329 SE2d 185) (1985), citing *Duncan* for the proposition that revocation may be permitted prior to final adoption for good and sufficient cause.

Another significant revision of Georgia's adoption law occurred in 1990. Ga. L. 1990, pp. 1579-1641. The statute enacted at that time is controlling in this case. It also contained the requirement of a written surrender established in 1977, OCGA §§ 19-8-4 through 19-8-7; the requirement that a parent may withdraw his or her surrender as a matter of right within ten days, OCGA § 19-8-9 (b); and the provision that "[a]fter ten days, *a surrender may not be withdrawn.*" (Emphasis supplied.) OCGA § 19-8-9 (b).

The 1990 amendment, like the 1977 amendment, contemplates a valid voluntary consent. After all, if there was no valid consent, there could be no voluntary surrender and there would therefore be nothing to withdraw. The purpose of the limitation amendments was to limit the right of a surrendering parent to withdraw a surrender after the ten-day limitation period to those cases in which there was no voluntary consent given initially. We have, however, continued to sometimes apply the "good and sufficient cause" analysis language from the pre-1977 statute cases when reviewing post-1977 revocation cases. *Schumacher v. Sexton*, 216 Ga. App. 628, 630 (455 SE2d 348) (1995) (citing *Ridgley* for the proposition that consent can be revoked prior to final adoption for good and ·sufficient cause); *Messer v. Marchman*, 205 Ga. App. 364, 365 (422 SE2d 250) (1992) (affirming the trial court's finding that no good and sufficient cause existed to support revocation of natural mother's consent); see also *Lee v. Stringer*, 212 Ga. App. 401, 403 (441 SE2d 861) (1994) (citing *Ridgley* and *Messer*).

According to the plain language of the current statute, a parent may not revoke his or her valid surrender after ten days. We hold that such limitation does not limit the right of a surrendering parent to establish that there was no valid, voluntary consent given by such parent initially. Consequently, we must disapprove of any language in *Messer*, *Lee*, *Schumacher*, and other cases which might suggest that under the version of OCGA § 19-8-9 (b) adopted in 1990, a surrendering parent has the right to withdraw a properly executed surrender outside the ten-day·withdrawal period for "good and sufficient cause," except as outlined herein.

Appellant argues that such an interpretation of OCGA § 19-8-9 (b) would lead to absurd results because a surrendering parent could not revoke a surrender even if it had been signed because of duress, fraud or incapacity. This argument is without merit, as such facts

would invalidate the consent and make the surrender voidable, in the same manner that such can be raised as a defense in a contract action involving the formation thereof. See *Families First v. Gooden*, 211 Ga. App. 272, 277 (5) (439 SE2d 34) (1993) (a surrender executed by an incapacitated party may be revoked).

*Judgment vacated and remanded with direction. Beasley, C. J., Pope, P. J., Andrews, Johnson, Smith and Ruffin, JJ., concur. McMurray, P. J., concurs and concurs specially. Birdsong, P. J., concurs specially.*

BIRDSONG, Presiding Judge, concurring specially.

Although I concur fully with all that is stated in the majority opinion, I write separately to urge the General Assembly to reconsider the extraordinary hardship it has placed on the natural parents of these adoptive children, and particularly upon these natural mothers, who are frequently poor and isolated from their families. As a juvenile judge I saw first-hand the extreme stress placed upon these mothers, who in many cases gave their children for adoption not because they wanted to or because they did not love the children, but because they felt that adoption was the best, if not the only, recourse available for the successful upbringing of their children.

Therefore, considering the extraordinary pressures bearing on these parents at the time these decisions must be made, ten days is entirely too short a period in which to revoke their surrender of their parental rights or irrevocably lose their right to do so. Consequently, I suggest the General Assembly revisit this issue. In this regard, I note that this Court received the benefit of an amicus brief from counsel who played a significant role in successfully including the ten-day period in our law, but I also note that his interest in this matter is as an adoptive parent and as an advocate for adoptive parents. While this continuing interest is laudable, the interests of natural parents should be considered by the General Assembly on this issue. Finality is an important end in these cases, but it is not the only end, and I do not believe the rights of the natural parents should be terminated so swiftly.

I am authorized to state that Presiding Judge McMurray joins in this special concurrence.

DECIDED DECEMBER 5, 1996 —
RECONSIDERATION DENIED DECEMBER 20, 1996

*Joseph T. Justice*, for appellant.
*Huff & Woods, Jeanne D. Woods, Cauthorn & Phillips, Bruce W. Phillips, Garcia & Powell, Tony D. Coy, Dorothy L. Bjork*, for appellee.

*James B. Outman*, amicus curiae.