A97A0475. HICKS et al. v. STARGEL et al.
(487 SE2d 428)

ANDREWS, Chief Judge.

Kimberly and Stephen Hicks appeal from the trial court's Order of Final Adoption granting the Stargels' petition to adopt their child, Jonathan Hicks. The Hickses attempted to revoke their consent to the adoption, even though this revocation was outside the ten-day limit provided for in OCGA § 19-8-9. The trial court found the Hickses had shown no legal reason for revoking their surrender of parental rights and consent to adoption. We affirm the judgment of the trial court.

The Stargels instituted the adoption proceedings after the Hickses left their ten-month-old son, Jonathan, in the Stargels' care. At the time, the Hickses were staying with relatives because they

could no longer afford to live on their own. They said they left Jonathan with Mrs. Stargel, Stephen Hicks' cousin, because Kimberly Hicks hurt her back and Stephen Hicks was spending all his time looking for work.

The Stargels wanted to adopt Jonathan and asked an attorney to draw up adoption papers. Both couples met with the lawyer, and the Hickses signed a surrender of rights and release for adoption. It is undisputed that the attorney explained the documents and had both parents read them before signing. The attorney also explained to the parents that they could withdraw their surrender within ten days. Twelve days later, the Hickses attempted to withdraw their consent.

The court held a hearing on the petition for adoption at which both the Stargels and Hickses were represented by counsel. Following the hearing, the court entered an order granting the Stargels' petition. The court found that the Hickses were fully informed of the content and the import of the documents they were signing and also that both were sufficiently intelligent to read and understand the surrender and release.

1. OCGA § 19-8-9 (b) provides that a parent has the right to withdraw a surrender of parental rights within ten days; however, "[a]fter ten days, a surrender may not be withdrawn." This Court has recently rejected the reasoning that a surrender may be withdrawn after the ten-day period for " 'good and sufficient cause.' " *In the Interest of B. G. D.*, 224 Ga. App. 124, 128 (479 SE2d 439) (1996). Accordingly, the surrendering parent must show duress, fraud or incapacity when signing the surrender, and then, as with all contracts, the consent is invalidated and the surrender becomes voidable. Id. at 128-129.

Here, the Hickses argue the surrender was invalid because there was conflicting evidence regarding "discussions about temporary custody, whether there was an agreement for continued visitation, whether there was any hurry to conclude the adoption, whether the appointment with [the attorney] was for an adoption or for custody, [and] whether the Hickses' fear of DFCS was known by the Stargels." The Hickses argue that in deciding these issues, the trial court did not weigh the evidence fairly or scrutinize the credibility of the adoptive parents.

The trial court is given wide discretion in determining matters in adoption proceedings, and when as here, the court has the opportunity to question and observe the parties, "if the court's judgment is supported by any evidence, and is not clearly erroneous, an appellate court is not authorized to set it aside." (Citations and punctuation omitted.) *Schumacher v. Sexton*, 216 Ga. App. 628, 630 (455 SE2d 348) (1995), disapproved on other grounds, *In the Interest of B. G. D.*, supra at 128. The reasons given by the Hickses for revoking their

consent, as set out above, show no evidence of fraud, duress or incapacity sufficient to invalidate the consent. Mrs. Hicks testified at the hearing that she and her husband were in the attorney's office signing and going over the adoption papers for an hour and a half. She stated that they were given copies of the documents before the attorney went over the papers with them. Both Mr. and Mrs. Hicks said they read the documents before signing. The court questioned Kimberly Hicks in detail as to whether she could read and whether she understood the surrender and release. Mrs. Hicks replied that she was a high school graduate. When questioned by the court, she admitted she gave up the child and then later decided she wanted him back. She also admitted the lawyer explained that this was an adoption and that it was permanent, not temporary. Stephen Hicks testified that he went through the tenth grade in school and also testified that he read the adoption papers.

The attorney who prepared the adoption papers stated that he went over the contents of the documents twice, once with Kimberly and once with Stephen. He testified that there was no confusion as to what the adoption meant, that it was to be permanent and not temporary. He also stated that no pressure was put on the Hickses to sign the document. The attorney testified that the only comment he heard the adoptive parents make in that context was that if the Hickses wanted them to take and raise the child, then it would have to be done legally because they did not want the Hickses to come back later and take the child away. Accordingly, the trial court correctly determined that there was no legal reason to revoke the Hickses' surrender of parental rights.

2. The Hickses also argue that the court improperly intervened on behalf of the adopting parents. They complain that the trial court's questions were designed to elicit evidence favorable to the adoptive parents. This enumeration is totally unsupported by citations to the record. Although appellants' brief states that an attachment lists citations to the transcript of comments by the court, we find no attachment. Moreover, it was certainly proper for the court, as factfinder in this case, to ask any and all questions it deemed necessary in order to reach a decision. See, e.g., *Haralson v. State*, 223 Ga. App. 787, 791 (479 SE2d 115) (1996) (trial judge has right to question witnesses for the purpose of developing fully the truth of the case).

3. In their last enumeration, the Hickses claim they were induced to surrender their child by payments in the form of food, lodging, and transportation. OCGA § 19-8-24 (a) makes it unlawful for anyone to hold out inducements to parents to part with their children. It defines the term " 'inducement' to include any direct or indirect financial assistance except 'payment or reimbursement of the

medical expenses directly related to the mother's pregnancy and hospitalization for the birth of the child and medical care for the child.'" *Douglas v. State*, 263 Ga. 748, 749 (3) (438 SE2d 361) (1994).

At the time of the adoption, the Hickses were living with Mrs. Stargel's mother, who was also Stephen Hicks' aunt. The Hickses claim that it is not necessary to find that this was done with the intent to unduly influence the Hickses, but rather that it reflected on the inability of the parties to reach an arm's length agreement. We disagree. The law is that financial assistance must be held out in order to induce the parents to part with their child. *Douglas*, supra at 749. While it can be argued that offering shelter to the Hickses is a form of indirect financial assistance, the Hickses must show that it was offered as an inducement to part with their child. Id. They point to no evidence in the record showing that Mr. Hicks' aunt took them in on the condition that they give their child up for adoption.

The Hickses also point to the Stargels' testimony that they (the Stargels) were buying the baby's milk, diapers, clothes, and bottles. But, the Hickses admit they left the baby with the Stargels before the adoption proceedings and asked them to care for him. Since the care and feeding of the baby was done at the Hickses' request, they cannot now claim that it was an inducement to part with the child. See *In the Interest of A. M. Y.*, 189 Ga. App. 847 (377 SE2d 893) (1989) (other than assumption of the financial obligation to provide care for the child, there was no financial inducement or consideration flowing from petitioner to biological mother).

*Judgment affirmed. Beasley, J., concurs specially. McMurray, P. J., concurs in the judgment only.*

BEASLEY, Judge, concurring specially.

I concur in the judgment, with the following qualifications.

1. The opinion measures the Hickses' evidence, with respect to their reasons for revoking consent, by the test provided by law for revocation of surrender of their son. The opinion states that the Hickses must show evidence (presumably by preponderance) "of fraud, duress or incapacity sufficient to invalidate their consent." In *In the Interest of B. G. D.*, 224 Ga. App. 124, 127 (479 SE2d 439) (1996), we agreed whole court that a surrender can be set aside if (by preponderating evidence) it was "based on duress, fraud, incapacity or other grounds which address the voluntariness of the consent." We should keep the exact language; as it is a court-created rather than statutory legal test, it will be used repeatedly, and it is crucial to the finality of adoptions.

2. Further, the opinion states that "the Hickses must show that [shelter] was offered as an inducement to part with their child." As authority for the establishment of this requirement of proof of fact

and burden of proof, *Douglas v. State*, 263 Ga. 748, 749 (3) (438 SE2d 361) (1994), is cited. The opinion in that case does say that "In order to violate § 19-8-24 (a) (2), . . . the financial assistance must be held out to induce parents to 'part' with their child." The Court is there construing a *criminal* statute and interpreting it to mean that the *State* must prove this fact beyond a reasonable doubt. This statute has implications in the context of the adoption proceeding as well, in that the same requirement of proof of fact would be put on the surrendering parents as put on the State, but for a different purpose. The State seeks to prove a criminal act. The surrendering parents seek to prove, by this same evidence, that the surrender was not voluntary as a matter of law because it was illegally induced. That would be one of the "other grounds" referred to in *B. G. D.*, supra.

It helps put the evidence in context when it is known that the child was a baby when the adoption proceeding began in April 1996 and concluded in September. The child was born October 17, 1995.

DECIDED JUNE 3, 1997.

Before Judge Stevens.

*Thurmond, Mathis & Pickett, Janice L. Mathis*, for appellants.
*Knox & Swan, William B. Swan, Jr.*, for appellees.