## 37933. BOZEMAN v. WILLIAMS.

JORDAN, Chief Justice.

The appellant brings this appeal from a judgment denying her petition for habeas corpus in which she sought the return of custody of her minor child.

The appellant, Mrs. Bozeman, is the natural mother of 4-year-old Michael Williams, the illegitimate child of Mrs. Bozeman and the appellee's son, Walter Williams, Jr. The appellee is the paternal grandfather of the minor child and currently has physical custody of the child.

There have been several legal actions between the parties involving this child from the time he was born. In the last action temporary custody of the child was awarded to Mrs. Bozeman pending an investigation of Mrs. Bozeman and Walter Williams, Jr.

Subsequently, in October of 1980, Mrs. Bozeman, who had raised the child since birth in 1977, relinquished physical custody to the appellee. She testified that she did so because (1) she had lost her job over a conflict with her manager; (2) the appellee's son wasn't making his child support payments (though there was some testimony that he had finally paid them); (3) she didn't have the means to and didn't feel she could adequately raise the child at this time; and (4) she had no one else to turn to but Walter Williams, Sr., the appellee.

Sometime during November 1980, Mrs. Bozeman signed a document entitled Surrender of Parental Rights and Final Release for Adoption. The appellee's attorney sent this paper to Mrs. Bozeman who signed it and returned it to him. The document was not dated or notarized and was not accompanied by an acknowledgment.

In January of 1981, Mrs. Bozeman married Marty Bozeman, a policeman for the City of Chamblee Police Department. Mr. Bozeman owns a home and earns fifteen thousand dollars a year. Mrs. Bozeman subsequently requested the return of the child. The request was denied, and the appellant then filed this habeas corpus proceeding. The habeas trial judge denied the petition, finding that Mrs. Bozeman had voluntarily relinquished custody to the appellee. We reverse.

In a contest between a parent and a third party over the custody of a child a parent may lose the right to custody only if one of the conditions specified in Code §§ 74-108, 74-109, and 74-110 is found to exist, or, in exceptional cases, if the parent is found to be unfit. *Mathis v. Nicholson,* 244 Ga. 106 (259 SE2d 55) (1979).

Though the trial court made no finding as to Mrs. Bozeman's fitness as a parent, the appellee argues the evidence would have justified a finding of unfitness, and that, consequently, the trial court's order is correct. We disagree. There was some evidence that Mrs. Bozeman had smoked marijuana, had held several jobs, had moved several times, and had had an abortion. A determination of unfitness must be based on the parent's present condition and must be shown by clear and convincing evidence. *Shaddrix v. Womack,* 231 Ga. 628, 632 (6) (203 SE2d 225) (1974); *Mathis v. Nicholson,* supra, at 106. The above evidence relates to past events, and there is ample evidence that the mother's condition has changed for the better by her marriage to Mr. Bozeman.

The right to custody may be lost under § 74-108 (a)(1) if the parent has forfeited his or her right to parental powers by releasing this right to a third person by voluntary contract. This voluntary contractual release of custody must be clear, definite and unambiguous. *Miele v. Gregory,* 248 Ga. 93, 94 (281 SE2d 565) (1981); *Durden v. Barron,* 244 Ga. 277, 278 (260 SE2d 17) (1979); *Fleming v. Reeves,* 243 Ga. 411, 412 (254 SE2d 362) (1979). The habeas trial court found that the mother had voluntarily relinquished her parental rights thereby losing her right to custody.

We hold that the trial court erred as a matter of law. All of the testimony and the only exhibit offered (i.e., the surrender of parental rights, final release for adoption) overwhelmingly show the intent of the parties was to agree to an adoption. The Georgia Legislature has comprehensively revised the adoption laws of this state in recent years, with one of the purposes being "to require surrender or termination of parental rights prior to adoption except in certain cases" and "to set forth the requirements and form of a surrender of parental rights." Ga. L. 1977, Vol. 1, p. 201. In addition, the language of the acknowledgement required by 74-404 (c)(4) indicates that one of its policies is to ensure that a parent giving up such an important right has knowledge of the surrender, has had the surrender explained to them, has had an opportunity to talk with a lawyer, and has freely agreed to the surrender.

In this case, there has been no compliance with these requirements. The appellee concedes this point but argues the evidence justifies a finding of a voluntary contractual release of the parental rights. However, the important legislative policies of this

state would be undermined if we allowed Mr. Williams to attempt to comply with these policies, yet fail, and then permitted him to achieve the same result by saying he and Mrs. Bozeman actually had created what is a separate agreement, a voluntary contractual release of the mother's parental rights. This court will not convert an invalid consent to adoption into a valid contractual release of parental rights.

*Judgment reversed. All the Justices concur, except Marshall, J., who dissents, and Weltner, J., not participating.*

DECIDED NOVEMBER 25, 1981 —
REHEARING DENIED DECEMBER 15, 1981.

*Robert W. Pierce,* for appellant.
*Andrew J. Hill, Jr.,* for appellee.