### 74662. HAYS v. JENG et al.
(360 SE2d 913)

Sognier, Judge.

Sen Fwu Jeng and Mai Jeng, the natural parents of Ming Jeng, brought an action in the probate court of Fulton County to terminate S. Carlton Hays' guardianship over their child. By consent of the parties, judgment was waived and the matter was appealed to the superior court where it was consolidated with the petition by Hays and his wife, Bonnie Hays, seeking the termination of the Jengs' parental rights in the child and the adoption of Ming. The trial court, sitting without a jury, concluded that the guardianship was temporary in nature and ordered the child returned to its natural parents, dismissing the petitions to terminate parental rights and to adopt. Carlton Hays appeals.

The record reveals that Sen Fwu Jeng and the Hayses had a close personal relationship: Sen Fwu served as the Hayses' cook, gardener and house cleaner prior to his marriage to Mai, and Carlton Hays handled all of Sen Fwu's business affairs. (Sen Fwu, a native of China, can neither read nor write English.) Carlton also assisted Sen Fwu in obtaining financing for a restaurant in which the Jengs, along with various relatives, worked 18-20 hours a day. Ming, the first child of the Jengs' marriage, was born at a time when the Jengs' restaurant was undergoing severe financial difficulties. After initially keeping Ming in a small office converted into a nursery at the restaurant, the Jengs accepted Bonnie Hays' offer to keep the child with her during the day. When the Jengs were transferred into an unheated apartment, the Hayses volunteered to keep Ming full time while the heating problem was being resolved, an offer the Jengs accepted. This coincided with an offer to the Jengs of temporary employment for six months in New Jersey which the Jengs, upon advice by Carlton, accepted. When Mai expressed concern about transporting Ming to New Jersey without having established housing there, the Hayses voluntarily agreed to continue to care for the child but insisted on securing guardianship papers. Carlton testified that he told the Jengs

guardianship papers were necessary in case Ming became sick during their absence and emergency medical treatment was required; he did not tell the Jengs it was his intention to keep the child "forever." Both the Jengs testified they signed the papers terminating their parental rights in Ming for guardianship purposes in the belief the arrangement was temporary and necessary to authorize the Hayses to act in case of a medical emergency.

The Jengs were in constant communication with the Hayses during their months in New Jersey. Mai Jeng returned to Atlanta after three months due to problems in the management of the Jengs' restaurant and visited Ming regularly. Although she allegedly requested the child's return, she did not press the matter when the Hayses refused because of her overwhelming work schedule. When Sen Fwu returned in September, Mai again requested Ming be returned. The Hayses then presented the Jengs with papers to allow them to adopt the child. The Jengs refused to sign. The Hayses thereupon agreed to return the child, but conditioned the return on Mai living with them, apart from her husband, for an unspecified period of time. Mai refused and after subsequent requests for the child were denied, the Jengs sought legal aid to recover their child.

Appellant contends the trial court's order granting appellees' petition to terminate his guardianship over Ming Jeng was not supported by the evidence. With both of Ming's parents alive, it cannot be said that Ming has no guardian. See OCGA § 29-4-2 (a); *Whitlock v. Barrett*, 158 Ga. App. 100, 101 (279 SE2d 244) (1981). Thus, appellant's claim to guardianship over Ming rests on his assertion that appellees either voluntarily relinquished their parental rights in Ming, OCGA § 19-7-1 (b) (1), or otherwise forfeited those rights. OCGA § 19-7-1 (b) (3) and (6). See generally *Robison v. Robison*, 29 Ga. App. 521 (2) (116 SE 19) (1923). This argument merges with appellant's remaining enumerations in which appellant contends that the trial court's dismissal of his petition to terminate appellees' parental rights and to adopt Ming Jeng was not supported by the evidence or, inversely, that there was clear and convincing evidence to justify terminating appellees' parental rights in the child and to authorize appellant to adopt Ming. We note that although appellant also argues that appellees' parental rights in the child should be terminated because Ming would be better off financially and otherwise with appellant and his wife, this does not afford a basis for terminating appellees' parental rights. See *Carvalho v. Lewis*, 247 Ga. 94, 95 (274 SE2d 471) (1981).

Addressing appellant's argument in regard to OCGA § 19-7-1 (b) (1), we affirm the trial court's ruling that appellees did not voluntarily relinquish their parental rights in Ming. The evidence of appellees' limited ability to read, write or speak English, appellees' close per-

sonal relationship with appellant, and the relative position of the parties is sufficient to support the trial court's finding that the document executed by appellees purporting to release permanently their parental rights in Ming did not constitute the type of voluntary contract required by OCGA § 19-7-1 to effect a relinquishment of parental rights. See *Blackburn v. Blackburn*, 168 Ga. App. 66, 70-71 (1) (308 SE2d 193) (1983); see also *Bozeman v. Williams*, 248 Ga. 606 (285 SE2d 9) (1981). Although the evidence did evince an intention by all parties to place the guardianship of Ming in appellant, we agree with the trial court that the guardianship at the time of its creation was intended to be, or was represented to be, temporary in nature. See OCGA § 29-4-4.1. We find no error in the trial court's dissolution of that temporary guardianship. OCGA § 29-4-4.1 (c).

We do not agree with appellant that he has a claim to guardianship over Ming due to appellees' alleged cruel treatment of Ming or that appellees' parental rights should be terminated because of that alleged cruel treatment under OCGA § 19-7-1 (b) (6). Even assuming the evidence of cruel treatment by appellees of Ming was admissible, that evidence consisted of one unverified episode in the past insufficient to justify terminating appellees' parental rights. See *Shaddrix v. Womack*, 231 Ga. 628, 632 (6) (203 SE2d 225) (1974). The Department of Family and Children Services submitted a report to the trial court after investigating appellees' home environment and found it to be suitable for the proper care and maintenance of the minor child. There is evidence to support the trial court's finding that the domestic conflict experienced between appellees stemmed from appellees' anguish over appellant's refusal to return Ming, coupled with the financial ties binding appellees to appellant. The record supports the trial court's finding that this conflict has been resolved for some time and that appellees are suitable and proper parents able to provide a healthy home environment and able to provide for the support and maintenance of their child.

Nor do we agree with appellant that the trial court's rulings were error in regard to appellees' alleged abandonment of Ming or their failure to provide necessaries under OCGA § 19-7-1 (b) (3). We agree with the trial court that the evidence is insufficient to show " 'an actual desertion, accompanied by an intention to sever entirely, as far as possible to do so, the parental relation . . . .' " as required to find that appellees abandoned their child. *Sims v. Sims*, 171 Ga. App. 99, 100 (318 SE2d 805) (1984). As to appellees' failure to provide necessaries for the child, the evidence reveals that appellees' offers of assistance were refused; appellant never asked appellees for assistance; and appellant voluntarily provided the child with all the necessities of life. Appellees further testified that they furnished meals to appellant and various family members free of charge at appellees' restaurant

several times each week and catered many parties for appellant all without charge. This evidence was not sufficient to show a relinquishment of appellees' parental rights. *Gray v. Sweat,* 125 Ga. App. 797 (1) (189 SE2d 87) (1972).

Since the record does not contain the clear and convincing evidence alleged by appellant to justify terminating appellees' parental rights in Ming but rather contains considerable evidence to support the trial court's order, we thus affirm that order granting appellees' petition to terminate appellant's guardianship and denying appellant's petition to terminate appellees' parental rights or to adopt.

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 10, 1987.

*Louis Levenson,* for appellant.
*S. George Handelsman,* for appellees.