A99A1234. IN RE STROH et al.
(523 SE2d 887)

ELDRIDGE, Judge.
This case involves the Echols County Superior Court's denial of an adoption petition filed by an Alabama couple, Allan G. and Brenda Stroh, appellants. For the reasons stated herein, we affirm

the trial court's denial of the adoption of the child, T. M. G.,[1] but reverse the trial court's refusal to grant custody of the child to the appellants while they pursue an adoption in Alabama.

The undisputed facts of this case are as follows: T. M. G. was born in Georgia on January 30, 1996. His mother, C. L. G., was not married to the child's putative father, K. J. In 1993, C. L. G. had given birth to a girl, A. D. S., in Alabama. The appellants adopted the girl as an infant.

When T. M. G. was approximately two months old, the Georgia Department of Human Resources ("DHR") obtained temporary custody of the child; the record is not perfected as to the basis for such custody. The DHR placed the child with a foster family, the Edmonsons (hereinafter "foster family"). The DHR, through the Echols County Department of Family & Children Services ("DFCS"), worked with C. L. G. in developing a reunification plan. Six months later, at a September 1996 hearing pursuant to a DFCS motion to extend temporary custody for one year, C. L. G. signed a document entitled "Acknowledgment of Surrender of Rights," allegedly surrendering her parental rights to T. M. G. and releasing him for adoption. The circumstances surrounding the signing of the alleged surrender (hereinafter "DHR surrender") are in dispute. However, it is undisputed that no surrender document was executed; the acknowledgment form was not dated; and the required affidavit from the DHR official supervising the DHR surrender was not attached. See OCGA §§ 19-8-4 (h); 19-8-26 (a), (j). Further, the record shows that, even though the DHR asserted that it had a valid surrender of C. L. G.'s parental rights in September 1996, the DHR did not pursue a permanent placement for this child or the termination of the putative father's rights, nor did the foster family pursue an adoption, during the next six months.

In the meantime, in July 1996, the appellants became aware of the birth of T. M. G. through the half-sister's former guardian ad litem, with whom they had worked during that adoption. The couple began adoption proceedings in Georgia and filed a petition for adoption in February 1997.[2] In the same petition, the appellants asked the trial court for a temporary restraining order to prevent the DHR from placing the child for adoption or participating in any adoption proceedings on anyone else's behalf until their adoption petition could be ruled upon. The temporary restraining order was issued on February 27, 1997.

---

[1] For confidentiality reasons, the child, his sister, and his parents will be referred to by their initials.

[2] The couple explained to the trial court that they had attempted to file adoption papers earlier, but that their first attorney had failed to pursue it in a satisfactory manner.

On March 5, 1997, C. L. G. signed a surrender of parental rights and release for adoption pursuant to OCGA § 19-8-5 (hereinafter "Stroh surrender"). The Stroh surrender clearly identified the appellants as the individuals to whom C. L. G. released her parental rights, giving the appellants 60 days during which to file an adoption petition. See OCGA § 19-8-5 (k). As such petition previously had been filed, the appellants filed an amendment to the petition on April 11, 1997, attaching the Stroh surrender and accompanying affidavits by C. L. G.

A notice was published in April and May 1997, notifying the putative father, K. J., of the pending adoption action. K. J. subsequently was personally served while incarcerated in Florida. On May 9, 1997, K. J. responded to the service by denying paternity of T. M. G. and demanding a blood test. On June 2, 1997, the DHR moved to intervene in the adoption petition under OCGA § 9-11-24 (a) (2), asserting that, "unless it is allowed to intervene, the State's interest in protecting the best interests of the minor child, [T. M. G.], will not be adequately represented by the existing parties to the action."[3] The DHR claimed that, because it had temporary custody of the child pursuant to the March 1996 juvenile court order, it

> had an interest in the outcome of this pending adoption case[,] has insufficient information to determine if [the appellants] are the fit and proper persons for adoption of the minor child, [T. M. G.], and whether or not it would not [sic] be in this child's best interests for the adoption to proceed.

On the same date, the DHR moved the trial court to appoint a guardian ad litem, alleging that "the child's interests are in conflict with the [appellants'] interest and it would be in the best interest of the child for a guardian ad litem to be appointed." See OCGA § 19-8-17 (c).

A hearing was conducted on June 23, 1997. During the hearing, the appellants requested that the trial court consider the adoption a "private adoption" premised upon the mother's surrender of rights to them. The appellants also asked the trial court to exclude the DHR and the foster family from the case and proceed exclusively on the private adoption petition.

The trial court denied the appellants' request to declare their petition a private adoption, granted the DHR's motion to intervene, and appointed a guardian ad litem. The trial court also told the foster

---

[3] On March 26, 1997, the DHR moved to dismiss the adoption petition, claiming that they were a necessary and proper party to the adoption and had not been served with notice. The trial court did not rule on this motion.

family that, if they wanted to adopt T. M. G., they had permission to either move to intervene in the current petition or file a separate adoption petition.

On August 6, 1997, the appellants filed a second amendment to the petition requesting, as an alternative to granting the Georgia adoption petition, that the trial court grant custody of T. M. G. to the appellants for one year so that they could complete an adoption in Alabama. Five months later, the trial court scheduled a final trial on the adoption petition for February 16, 1998. However, in January 1998, the trial was stayed indefinitely so that the DHR could file a petition for termination of both parents' rights to the child, even though the DHR continued to assert that C. L. G. had validly surrendered her parental rights to them in September 1996.[4]

On May 12, 1998, the foster family filed a petition to adopt T. M. G., 11 months after having received permission to do so by the trial court. The final hearing on both the appellants' petition and the foster family's petition was held on July 16, 1998. During the hearing, the trial court heard testimony from both couples, as well as numerous friends and neighbors. The appellants presented evidence which showed the following: they had been married to each other for 22 years; they adopted T. M. G.'s half-sister in 1993 in Alabama; they own a five-bedroom house on five acres in Montgomery, Alabama; Mr. Stroh owns and operates several radio stations; Mrs. Stroh is a homemaker; they are active in their church; they are both in good health; and they are financially stable, with adequate health insurance coverage. The foster family also presented evidence regarding their adoption petition.

After the close of evidence regarding the fitness of the two families, the trial court remarked that

> I feel comfortable in saying to everyone here today that regardless of what the ruling of the court is, that ruling will not depend on the fitness or unfitness of one party as opposed to the other necessarily. I don't think there's been any evidence submitted today to suggest in any way that neither one of these couples would make an excellent parent for the child.

The trial court then heard evidence regarding the validity of the mother's DHR surrender and the subsequent Stroh surrender. The mother, C. L. G., testified that, at the time she signed the DHR surrender, she was told by the DHR representative that the appellants

---

[4] According to the DHR, the Echols County Juvenile Court subsequently terminated the parental rights of both C. L. G. and the putative father, K. J., on June 9, 1998.

would be able to adopt T. M. G. once she signed the papers. She stated that "I signed [the DHR surrender] because I wanted my son to be with his sister with the Strohs[,]" and that she would not have signed the DHR surrender otherwise. She then testified that she assigned to the appellants her rights to T. M. G. and gave permission to adopt him on March 5, 1997, and that she still wanted the appellants to adopt him. The DHR countered this evidence with testimony from the DHR representative who supervised the DHR surrender in September 1996. The DHR representative testified that C. L. G. did not request any specific placement when she signed the DHR surrender.

The trial court denied the foster family's adoption and dismissed the petition on August 26, 1998, finding that the petition failed to comply with the statutory requirements under OCGA § 19-8-4, § 19-8-5, or § 19-8-13.

In a separate order dated the same day, the trial court denied the appellants' petition, finding that the fact that the appellants were not Georgia residents for the six-month statutory period under OCGA § 19-8-3 (a) (3)[5] mandated denial of the petition. In its order, the trial court specifically found that the appellants had adopted T. M. G.'s half-sister, presented evidence that they could provide T. M. G. a good home, and had secured a surrender from C. L. G. The trial court also found that C. L. G. preferred that the appellants adopt T. M. G. The trial court's order did not address the appellants' request for temporary custody of T. M. G. so that they could pursue an Alabama adoption.

On September 22, 1998, the appellants filed a motion for reconsideration, asking the trial court to address their request for custody pending an Alabama adoption. In December 1998, the trial court granted the motion to reconsider, voided the previous order, and issued a new order. In the revised final order, the trial court denied the appellants' request for custody, finding that, because C. L. G. had "executed all documents necessary for the placement of [T. M. G. with DFCS]," custody should remain with the DHR/DFCS and the agency should proceed with placing T. M. G. for adoption. The appellants timely appealed from this order. *Held*:

1. In their first enumeration, the appellants contend that the trial court abused its discretion in refusing to grant them custody of

---

[5] Under OCGA § 19-8-3 (a),
[a]ny adult person may petition to adopt a child if the person: (1) [i]s at least 25 years of age or is married and living with his spouse; (2) [i]s at least ten years older than the child; (3) [h]as been a bona fide resident of this state for at least six months immediately preceding the filing of the petition; and (4) [i]s financially, physically, and mentally able to have permanent custody of the child.

T. M. G. pending adoption, pursuant to the Interstate Compact on the Placement of Children ("Interstate Compact"), OCGA § 39-4-1 et seq. We agree.

(a) As an initial matter, this Court reluctantly affirms the trial court's determination that OCGA § 19-8-3 (a) (3) requires the denial of the appellants' adoption petition. See *H. C. S. v. Grebel*, 253 Ga. 404, 405 (321 SE2d 321) (1984). The uncontradicted evidence showed that the appellants were not residents of Georgia for the requisite six months prior to filing the adoption petition.[6]

(b) However, the trial court abused its discretion in refusing to place the child in Alabama pending adoption. In reaching such conclusion, this Court reviewed the case from the onset of the DHR's custody in March 1996 to establish the legal status of T. M. G., the appellants, and the DHR prior to the final hearing in July 1998.

(i) *The surrender of rights to the DHR.* The trial court found that C. L. G. had executed all documents necessary to surrender her rights to the DHR, thereby indicating, without expressly finding, that such surrender was valid. However, such conclusion was error as a matter of law.[7]

"The requirements of the adoption statute are mandatory and should be strictly construed and meticulously followed so that beyond all peradventure the adoption will not later be subject to attack." (Citations and punctuation omitted.) *Tyson v. Dept. of Human Resources*, 165 Ga. App. 414, 415 (301 SE2d 485) (1983). See also *Johnson v. Smith*, 251 Ga. 1, 3 (302 SE2d 542) (1983); *Bozeman v. Williams*, 248 Ga. 606 (285 SE2d 9) (1981); *Nelson v. Taylor*, 244 Ga. 657 (1) (261 SE2d 579) (1979). However, the executed forms may vary slightly from those presented in OCGA § 19-8-26, as long as they substantially conform to the statutory text.

In this case, the record does not contain the "Surrender of Rights — Final Release for Adoption" form, required under OCGA § 19-8-26 (a). The absence of this essential form invalidates this surrender as a matter of law.

In addition, under OCGA § 19-8-4 (h), "[w]henever rights are surrendered to the department or to a child-placing agency, the department or agency representative before whom the surrender is signed shall execute an affidavit meeting the requirements of subsection (j) of Code Section 19-8-26." See also *Tyson v. Dept. of Human Resources*, supra. Such affidavit affirms that the person signing the surrender form "knowingly, intentionally, freely, and voluntarily"

---

[6] Alabama has no such residency requirement. Alabama Code § 28-10A-5.

[7] We note that the DHR implicitly recognized that the surrender was invalid when it later moved to terminate the mother's parental rights, an action that would have been unnecessary if the surrender was valid.

surrendered all rights to the child. OCGA § 19-8-26 (j). It is undisputed that this affidavit was not attached to the acknowledgment form, and no such affidavit appears in the record of this case. The absence of this affidavit is particularly significant in this case, as the circumstances surrounding the signing of the DHR surrender are in dispute. The mother, C. L. G., testified at the final hearing that she clearly expressed her desire for the child to be placed with the appellants and was assured by DHR officials that such placement would take place. This understanding is also reflected in C. L. G.'s affidavit, which was attached to the Stroh surrender. However, DHR claims that no such assurance was given; that C. L. G. initiated the DHR surrender that day; and that C. L. G. seemed unconcerned about the eventual placement of the child. Under the circumstances, the DHR affidavit attesting to the voluntariness and intent of the surrender was a necessary attachment to the surrender, and the absence thereof invalidates the document. See *Bozeman v. Williams*, supra (surrender was invalid when it was not dated, notarized, or accompanied by an acknowledgment of rights being surrendered); *Tyson v. Dept. of Human Resources*, supra (surrender was invalid when wrong form was utilized).

In addition, the DHR surrender document was undated, a singular defect which may not have invalidated it but, coupled with the missing surrender form and DHR affidavit, clearly demonstrates that the surrender documents did not "conform substantially" to the statutory requirements. See OCGA § 19-8-26 (g), (j). As such, this alleged surrender was legally insufficient and, therefore, invalid as a matter of law.

(ii) *The Stroh surrender*. In contrast, the Stroh surrender was legally valid, in that it was in substantial compliance with the requirements of OCGA §§ 19-8-5 and 19-8-26. Since C. L. G. did not execute a valid surrender to the DHR, she retained her parental rights and was able to subsequently voluntarily surrender those same rights to the appellants, vesting standing in the appellants to seek physical custody of T. M. G. immediately.

Although the DHR did not challenge the Stroh surrender directly, asserting only that the prior DHR surrender invalidated any subsequent surrender of rights, we note that the Stroh surrender also was missing affidavits by C. L. G. and the appellants as to whether the surrender was executed knowingly and voluntarily. See OCGA § 19-8-26 (g), (k). However, C. L. G. never contested the validity of the Stroh surrender but, instead, reaffirmed at the final hearing her intention to release the child to the appellants and consent to their adoption of T. M. G.; this affirmation constituted the substantial equivalent to the missing affidavits. Accordingly, the absence of the affidavits did not invalidate the Stroh surrender. *Mabou v. Eller*,

232 Ga. App. 635 (502 SE2d 760) (1998); *Lee v. Stringer*, 212 Ga. App. 401, 402 (1) (441 SE2d 861) (1994) (surrender was valid even though certain specific statutory language was missing, as it was "mere surplusage" under the circumstances of the case).

(iii) *The termination of the mother's parental rights.* Since C. L. G. voluntarily and completely released her parental rights to the appellants and consented to their adoption of T. M. G., the State's subsequent termination of C. L. G.'s rights was void ab initio,[8] as was the permanent placement of custody in the DHR following such termination. See OCGA §§ 15-11-80 et seq.; 19-7-1 (b) (2); 19-8-5.

Therefore, at the time of the final hearing, the DHR only retained temporary custody of the child pending adoption by the appellants and *never* secured permanent custody. The filing of the appellants' adoption petition pursuant to the valid surrender should have caused the DHR to initiate an investigation on the petition in anticipation of the adoption by the appellants, as required by OCGA § 19-8-16 (a), and to pursue the termination of the putative father's parental rights in a timely manner. See OCGA § 19-8-11 (a) (2). It is undisputed that the DHR did neither.[9] It is also clear from the record that this failure to act was the major cause of a delay in the adoption proceedings from February 1997, when the appellants' adoption petition was filed, until July 1998, when the final hearing was conducted. During this time, T. M. G. remained in foster care in Georgia.

(c) Since the appellants obtained a valid surrender but were legally precluded from adopting in Georgia, it is clear that the trial court should have transferred custody to them in order to assist in their pursuit of an Alabama adoption. Such action would have been consistent with the Interstate Compact, the Uniform Child Custody Jurisdiction Act, other Georgia statutes, Georgia's public policy, and the best interest of T. M. G.

(i) *The Interstate Compact.* Under Georgia's Interstate Compact,[10] "[i]t is the purpose and policy of the party states to cooperate with each other in the interstate placement of children" so that each child receives the maximum opportunity to be placed in a suitable environment or home. OCGA § 39-4-4, Art. I (a). Further, the Interstate Compact provides a mechanism for states which are cooperating in an interstate adoption to ascertain the facts and circumstances

---

[8] This Court will not rule as to the validity of the termination of the father's parental rights since such determination is not before this Court.

[9] Although the DHR claimed that the appellants' February 27, 1997 restraining order prevented them from conducting the mandatory pre-adoption investigation or from terminating the putative father's rights, the language of the order only restrains the DHR from placing T. M. G. for adoption and assisting in his adoption by anyone other than the appellants.

[10] Alabama has adopted an almost identical provision, Alabama Code § 44-2-20 et seq.

of the proposed adoption, including allowing the opportunity for the sending state to "obtain the most complete information on the basis of which to evaluate a projected placement before it is made." OCGA § 39-4-4, Art. I (b), (c). See also OCGA §§ 39-4-4, Art. V (b); 39-4-10. Under this provision, "[a]ppropriate jurisdictional arrangements for the care of children will be promoted." OCGA § 39-4-4, Art. I (d). In addition, "[t]he provisions of this compact shall be liberally construed to effectuate the purposes thereof." OCGA § 39-4-4, Art. X.

Notably, OCGA § 19-8-5 (l) requires that, in any surrender of parental rights to the DHR, the provisions of the "Interstate Compact on the Placement of Children, if applicable, shall be complied with." See also OCGA § 19-8-4 (j) (same provision applies to surrenders to DHR or a child placement agency). Clearly, the Interstate Compact provides the statutory authority under which the DHR could have obtained necessary information for its pre-adoption investigation. The DHR could then have notified Alabama of the pending interstate placement and obtained the state's consent, as required by the Interstate Compact, OCGA § 39-4-4, Art. III.

Further, once T. M. G. was transferred to Alabama pursuant to the Interstate Compact, Georgia would have retained jurisdiction over the child "sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained" in Georgia until the Alabama adoption was final. OCGA § 39-4-4, Art. V (a). Such jurisdiction includes the "power to effect or cause the return of the child" to Georgia. Id. Therefore, if the appellants did not file a timely adoption petition in Alabama, or if the Alabama adoption was not finalized, the trial court would be authorized to return the child to Georgia and place the child in the DHR's custody. See OCGA § 19-8-5 (k). DHR would then have the responsibility of placing the child for adoption by other interested individuals. OCGA §§ 19-8-4; 19-8-5 (k); 15-11-90 (d). Accordingly, even after the placement of T. M. G. in Alabama, Georgia would retain the ability to supervise and protect the child until adoption. Under these circumstances, the trial court should have ordered the DHR to act under the Interstate Compact to effectuate the placement of T. M. G. with the appellants.

(ii) *The Uniform Child Custody Jurisdiction Act.* Further, since the appellants were not eligible to adopt T. M. G. in Georgia, their only opportunity for such adoption was in Alabama's courts. However, since T. M. G. has resided in Georgia his entire life, Georgia has exclusive personal jurisdiction over T. M. G.'s custody under the Uniform Child Custody Jurisdiction Act ("UCCJA"), OCGA § 19-9-40 et

seq.[11] The UCCJA applies to adoption proceedings and is to be construed in pari materia with other statutory provisions regarding child custody and adoption. OCGA § 19-9-42 (3); see also *Gainey v. Olivo*, 258 Ga. 640, 641 (373 SE2d 4) (1988); *Gambrell v. Gambrell*, 246 Ga. 516, 517 (272 SE2d 70) (1980).

Under the UCCJA, Alabama can obtain jurisdiction over T. M. G. only if Alabama is his "home state" for at least six months prior to the adoption. Alabama Code § 30-3-22 (5); see also OCGA §§ 19-9-42 (5); 19-9-43 (a) (1) (A). Therefore, unless T. M. G. is placed in Alabama pursuant to the appellants' amended petition, the only way they will be able to adopt the child would be to establish residency in Georgia, pursuant to OCGA § 19-8-3 (a) (3), at least six months prior to filing a new adoption petition. As the appellants have demonstrated that they have a stable, long-term residency in Alabama, and because the Interstate Compact and the UCCJA provide other options, imposing such relocation as a condition precedent to adoption is per se unreasonable and against the public policy of Georgia.

(iii) *Public policy and other statutory provisions.* The public policy of Georgia is clear that, when possible, individuals with blood relationships should be kept together. This policy is codified in OCGA § 15-11-90 (a) (1), which states that if "there is no parent having parental rights, the court shall first attempt to place the child with the child's extended family or with a person related to the child by blood or marriage." The appellants in this case are the adoptive parents of T. M. G.'s only identified blood relative, his half-sister. It is consistent with the public policy of this state that T. M. G. be placed in the same home so that the children may be raised as siblings.

(iv) *The best interest of the child.* The only remaining issue, therefore, is the determination of whether such placement is in the child's best interest. OCGA § 19-8-18 (b). Although the trial court has substantial discretion in making a determination as to this issue, this Court notes that the trial court did not make *any* findings regarding T. M. G.'s best interest. Instead, the trial court found that, since the DHR had permanent custody of the child pursuant to the termination of both parents' rights, the agency should retain custody and proceed with placing the child for adoption.

However, this Court previously determined that the appellants had secured a valid surrender from C. L. G. and that the DHR never had more than temporary custody of T. M. G. pending adoption. See Division 1 (b), supra. Further, the record clearly demonstrates that the appellants are "capable of assuming responsibility for the care,

---

[11] Alabama has adopted a similar version of the UCCJA, Alabama Code § 30-3-20 et seq.

supervision, training, and education of the child," OCGA § 19-8-18 (b), and would be eligible to adopt but for the OCGA § 19-8-3 (a) (3) residency requirement. The guardian ad litem interviewed individuals in Georgia and Alabama and concluded that the appellants would provide an "excellent" home for T. M. G. Although the evidence indicated that the foster family had bonded to some extent with T. M. G. during their two and one-half year relationship, such evidence is not dispositive, since the evidence also demonstrated that the child would not have remained in the foster family's custody for this length of time if the DHR had not unreasonably delayed the pursuit of this adoption.[12] This child should not lose the opportunity to be raised as a sibling to his half-sister by a clearly qualified couple due to bureaucratic delays and avoidable mistakes. The alternative to placing this child with the appellants would be to keep the child in foster care until adopted by another couple. Under the circumstances of this case, it is clearly in T. M. G.'s best interest to be placed with the appellants while they pursue an Alabama adoption.

Therefore, this Court finds that the trial court abused its discretion in refusing to grant the appellants custody of T. M. G. while they pursue an Alabama adoption. We remand this case to the trial court with direction to grant the appellants' petition for custody pending such adoption. This Court further directs the DHR to cooperate with Alabama authorities to obtain that state's consent regarding this transfer of custody and to assist Alabama as necessary to effectuate the proposed adoption.

2. The appellants also challenge the trial court's refusal to consider their adoption petition a "private" or independent adoption, i.e., one that is accomplished when parental rights to a child are surrendered to a third party pursuant to OCGA § 19-8-5. Under such arrangement, the third party has 60 days in which to file an adoption. OCGA § 19-8-5 (k). Except in cases of excusable neglect, if no petition is filed within 60 days, the surrender transfers to the DHR, which assumes custody and places the child for adoption through its standard procedures. Id.

---

[12] In addition to its reliance on the clearly invalid DHR surrender, its failure to act promptly to pursue an investigation on the appellants' adoption petition or to terminate the putative father's parental rights, and its misguided interpretation of the temporary restraining order, the DHR also repeatedly and incorrectly asserted that the juvenile courts had exclusive jurisdiction over this case. However, the superior court has exclusive subject matter jurisdiction over the adoption, as well as concurrent jurisdiction over the termination of parental rights, which was in connection with the adoption. OCGA §§ 15-11-5 (a) (2) (C) (prior to its amendment, which was effective July 1, 1997, the statute also gave the superior court exclusive jurisdiction over terminations which were in connection with adoptions); 19-8-2 (a); *H. C. S. v. Grebel*, supra at 406 (1); *In the Interest of D. L. N.*, 234 Ga. App. 123 (506 SE2d 403) (1998); *In the Interest of B. G. D.*, 224 Ga. App. 124, 125 (1) (479 SE2d 439) (1996); *Edgar v. Shave*, 205 Ga. App. 337, 338 (1) (422 SE2d 234) (1992); see also Division 3, infra.

Having previously found that the Stroh surrender was valid, this Court finds that the appellants' petition should have been considered a private adoption under OCGA § 19-8-5. However, the appellants have failed to demonstrate how a "private adoption" status would have altered the trial court's determination that, as non-residents, they were not eligible to adopt in Georgia under OCGA § 19-8-3 (a) (3). Accordingly, the trial court's refusal to consider the petition a private adoption does not require reversal of its denial of the adoption.

3. In their third enumeration, the appellants assert that the trial court erred in allowing the DHR to intervene in this action. Even though this Court has given specific directions for the trial court upon remand, the status of the DHR in this action must be addressed.

In Division 1 (b) (iii), supra, this Court found that the DHR never acquired more than *temporary* custody of T. M. G. pending adoption. Although the DHR claimed that it had an interest in the matter that could not be protected absent its intervention, "the requirements for intervention under [OCGA § 9-11-24 (a) (2)] are three-fold: interest, impairment resulting from an unfavorable disposition, and inadequate representation." (Citations and punctuation omitted.) *Kubler v. Goerg*, 197 Ga. App. 667, 668 (1) (399 SE2d 229) (1990).

Without deciding whether the DHR's temporary custody arose to an "interest" that would fulfill the first requirement,[13] we find that there is no evidence that such interest would be impaired by the disposition of this case. The DHR had temporary custody pending adoption by the appellants, so that a successful adoption by the appellants would have ended its interest in the case. This result is not an impairment but is, in fact, the desired result of DHR's assuming temporary custody. See OCGA § 49-5-8 (a) (7). In the event that the adoption was not completed, custody would be vested in the DHR, which could then place the child for adoption. See OCGA §§ 19-8-5 (k); 19-8-26 (c). Either way, the DHR's "interest" in this child would not be impaired if intervention was denied.

Further, as to whether the DHR's role in protecting the child would have been compromised because of inadequate representation,

---

[13] See *Edgar v. Shave*, supra at 338-339 (2), (4) (wherein a grandmother with temporary custody of children had no right to intervene in pending adoption, which followed mother's surrender of rights to adopting family); but cf. *Drummond v. Fulton County Dept. of Family &c. Svcs.*, 237 Ga. 449, 458 (4) (228 SE2d 839) (1976) (DFCS was allowed to intervene in adoption petition because it stood in loco parentis after it obtained "all the legal rights of a natural parent" following termination of mother's rights); *In re Ashmore*, 163 Ga. App. 194 (293 SE2d 457) (1982) (wherein this Court found that a private adoption agency, which had *permanent* custody of the child following the mother's surrender of her rights, had an interest in the outcome of the father's petition to legitimate, so that it had a right to intervene).

the DHR has presented no authority — and we have found none — that demonstrates that the DHR must be a party to an adoption petition in order to perform its statutory duties in investigating the adoption petition and making recommendations to the trial court. Contrary to the assertions of the DHR, there are several statutory mandates that provide the framework and authority for such investigation by the DHR, as well as protect the DHR's ability to make nonbinding recommendations to the trial court regarding whether the adoption is in the best interest of the child. OCGA §§ 19-8-16 (a); 19-8-17 (a), (b); 49-5-8 (a) (7), (b), (c) (allows DHR to contract with another state "for the reciprocal provision of adoption assistance services[,]" including pre-adoption investigations); see also OCGA §§ 39-4-4, Art. V (b); 39-4-10. In addition, the trial court in this case appointed a guardian ad litem to protect the interest of the child.

Under these circumstances, the DHR was not entitled to intervene in this action under OCGA § 9-11-24 (a) (2), and the trial court abused its discretion in allowing such intervention.

4. The appellants' remaining enumeration has been addressed in Division 1 (c) (iii), supra.

*Judgment affirmed in part, reversed in part, and remanded with direction. Pope, P. J., and Smith, J., concur.*

DECIDED OCTOBER 20, 1999 —
RECONSIDERATION DENIED NOVEMBER 17, 1999 — ▮▮▮▮▮▮

*Saliba, Edwards & Moore, George M. Saliba II*, for appellants.
*Charles R. Reddick*, for appellee.