A08A1485. SASTRE et al. v. McDANIEL et al.
(667 SE2d 896)

MILLER, Judge.

Iane and Lydia Sastre appeal from the trial court's order dismissing, without prejudice, their petition for adoption of A. L. R. (the "child"), arguing that the trial court erred in finding that the Sastres were not Georgia residents and in allowing the Lamar County Department of Family and Children Services (the "Department") to object to the adoption proceedings. Discerning error, we reverse.

"In matters of adoption, the superior court has a very broad discretion which will not be controlled by the appellate courts except in cases of plain abuse." (Citation and punctuation omitted.) *Smith v. Hutcheson*, 283 Ga. App. 117, 118 (640 SE2d 690) (2006). When, as here, an appeal involves questions of law, we owe no deference to the trial court and apply the "plain legal error" standard of review. *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

The record shows that after the child's birth on March 1, 2006, the Sastres were recognized by her biological parents as the child's Godparents. In that capacity, the Sastres assisted in caring for the child for a period of two months while the biological mother coped with a substance abuse problem. On January 16, 2007, nunc pro tunc December 20, 2006, the Juvenile Court of Lamar County (the "juvenile court") issued a written order finding the child to be deprived as to her biological mother and father (the "parents") and placed the child in the temporary custody of the Department. In August 2007, while the child remained in the custody of the Department, the parents executed separate surrenders of their parental rights to the child in favor of the Sastres. These surrenders served as the basis for the instant petition for adoption filed by the Sastres in the Superior Court of Lamar County (the "superior court") on September 17, 2007. The Department filed its objection to the petition on October 15, 2007, alleging that the parents' surrenders of their parental rights and the Sastres' adoption petition represented efforts to avoid their responsibilities under a case plan ordered by the juvenile court and to thwart any court-ordered termination of their parental rights.

On November 5, 2007, the Department filed a petition for the termination of the parents' parental rights in the juvenile court. The

Sastres moved to intervene in the termination proceeding a month later, and in early January 2008, the Department filed a motion in the superior court to remand the case to the juvenile court for consolidation of the adoption and termination proceedings. The Department subsequently placed the child with the child's "foster to adopt" parents,[1] Charles S. and Kimberley A. McDaniel. On February 11, 2008, the McDaniels filed their answer, defenses, and motions to intervene and dismiss the Sastres' petition for adoption. Like the Department, the McDaniels asserted that the parents' surrenders of parental rights should be disregarded as executed to avoid and circumvent an involuntary termination of their parental rights in the juvenile court. Following a hearing, the superior court dismissed the Sastres' petition for adoption without prejudice, finding that the Sastres, who had moved to Tennessee from Georgia to permit Mr. Sastre to attend a seminary, were nonresidents of Georgia "as contemplated by OCGA § 19-8-3 (a) (3)." The superior court also declined to stay the termination proceedings in juvenile court and found that all other issues pending in connection with the adoption action were moot.

1. The Sastres contend that the superior court erred in dismissing their petition for adoption upon finding that they were nonresidents of Georgia within the meaning of OCGA § 19-8-3 (a) (3). We agree.

OCGA § 19-8-3 (a) (3) provides that a person petitioning to adopt a child in Georgia must show that he or she "[h]as been a bona fide resident of this state for at least six months immediately preceding the filing of the petition." By their appellate brief, the Sastres correctly assert that the adoption statute, OCGA § 19-8-1 et seq., fails to define the words "bona fide resident" as set out therein, arguing that the word "resident" should be defined as it is in OCGA § 19-5-2 (see *Conrad v. Conrad*, 278 Ga. 107, 108 (597 SE2d 369) (2004) ("As used in OCGA § 19-5-2, 'resident' means 'domiciliary.'") (citation omitted)). As such, the Sastres assert that the dismissal of their petition for adoption was error because they remained domiciliaries of Georgia, even though they were living in Tennessee while Mr. Sastre completed his seminary education.

By their undisputed, verified petition for adoption, the Sastres averred that they have lived in White Oak, Georgia, since 2002; that they moved to Tennessee in November 2007 to permit Mr. Sastre to attend seminary; and that they will be returning to Georgia upon the completion of Mr. Sastre's seminary education.

---

[1] The Department placed the child in the custody of the McDaniels on such basis upon its approval of their home in contemplation of an eventual adoption.

While Chapter 8 of Title 19 of the Code does not define the phrase "bona fide resident" as it is used in OCGA § 19-8-3 (a) (3), we find no basis to depart from the definition our Supreme Court has given the same as to divorce for purposes of determining eligibility to adopt. *Conrad*, supra, 278 Ga. at 108. We also find such construction to be wholly consistent with the Department's interest in finding adoptive parents who are most able to provide for the welfare and best interests of children placed for adoption. Thus, we hold that the phrase "bona fide resident," as used in OCGA § 19-8-3 (a) (3), requires a showing of status as a Georgia domiciliary for at least six months immediately before the filing of the petition for adoption. See OCGA § 19-2-1; see also *Abou-Issa v. Abou-Issa*, 229 Ga. 77, 78 (189 SE2d 443) (1972) ("[D]omicile refers to a single fixed place of abode with the intention of remaining there indefinitely, *or the single fixed place of abode where a person intends to return, even though the person may in fact be residing elsewhere*.") (citations omitted; emphasis supplied). Our prior decisions construing OCGA § 19-8-3 (a) (3) are consistent with this construction of the words "bona fide resident." See, e.g., *H. C. S. v. Grebel*, 253 Ga. 404, 405 (321 SE2d 321) (1984) (petitioners residing in Colorado); *In re Stroh*, 240 Ga. App. 835, 840 (1) (a) (523 SE2d 887) (1999), rev'd on other ground, *In re T. M. G.*, 275 Ga. 543 (570 SE2d 327) (2002) (petitioners residing in Alabama).

Given the foregoing, we turn to a consideration of the question of whether the Sastres' move to Tennessee made them domiciliaries of Tennessee, requiring the dismissal of their petition for adoption. *Grebel*, supra, 253 Ga. at 405; *Stroh*, supra, 240 Ga. App. at 840 (1) (a). Our Supreme Court has held, however, that "a concurrence of actual residence and [intent] to remain[ is necessary] to acquire a domicile." (Citation and punctuation omitted.) *Conrad*, 278 Ga. at 108. Here, there is only evidence that the Sastres intend to return to Georgia upon the completion of Mr. Sastre's course of instruction in Tennessee. See *Rolland v. Martin*, 281 Ga., 190, 191 (637 SE2d 23) (2006) ("[R]egardless of the precise procedural context, a 'verified complaint serves as both pleading and evidence.' ") (citation omitted.).

As such, the record to this point shows that the Sastres, since 2002, have been and remain Georgia domiciliaries. See *Abou-Issa*, supra, 229 Ga. at 78. Accordingly, the trial court's dismissal of the Sastres' petition for adoption, without prejudice, must be and is reversed.

2. Inasmuch as it may become an issue on rehearing, we address the Sastres' further claim that the Department lacked standing to object to the adoption proceedings and find that it is without merit.

OCGA § 9-11-24 (a) (2) provides that a party may intervene as a matter of right when an interest in the subject matter of the action will be impaired absent his or her participation, "unless the applicant's interest is adequately represented by existing parties." In this regard, the record shows that the juvenile court had adjudicated the child deprived and placed her in the temporary custody of the Department with direction that the Department prepare a reunification case plan for the benefit of the family. While the parents' surrenders of their parental rights was the basis for the adoption petition (OCGA § 19-8-4 (a) (1)), the Department remained the temporary legal custodian of the child pursuant to the juvenile court's deprivation order which obligated it to implement the above-referenced case plan. Given that the Department's interest in the child as her temporary legal custodian was unrepresented in the adoption proceedings and at risk of impairment, the juvenile court did not err by allowing the Department to intervene through its objection to the adoption. OCGA §§ 9-11-24 (a) (2) and 15-11-13; *Smith*, supra, 283 Ga. App. at 118.

*Judgment reversed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 23, 2008.

*Clark & Williams, Jason R. Clark, James L. King II, Frances W. Dyal*, for appellants.

*Charles B. O'Neill, Jr.*, for appellees.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General*, amici curiae.